Denisse O. Gastélum, SBN 282771
**GASTÉLUM LAW, APC**
**A PROFESSIONAL CORPORATION**
3767 Worsham Ave.
Long Beach, California 90808
Tel: (213) 340-6112
Fax: (213) 402-8622
Email: dgastelum@gastelumfirm.com

Christian Contreras, SBN 330269
**THE LAW OFFICES OF**
**CHRISTIAN CONTRERAS**
**PROFESSIONAL LAW CORPORATION**
360 E. 2nd St., 8th Floor
Los Angeles, California 90012
Tel: (323) 435-8000
Fax: (323) 597-0101
Email: CC@Contreras-Law.com

Attorneys for Plaintiffs,
ESTATE OF KAUSHAL NIROULA, by and through successors in interest, Radha Niroula and Krishna Niroula; RADHA NIROULA, individually; KRISHNA NIROULA, individually

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF KAUSHAL NIROULA, by and through successors in interest, Radha Niroula and Krishna Niroula; RADHA NIROULA, individually; KRISHNA NIROULA, individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF RIVERSIDE, a public entity; RIVERSIDE COUNTY SHERIFF'S DEPARTMENT; SHERIFF CHAD BIANCO, in his individual and official capacities; EDWARD DELGADO; JAMES KRACHMER; DAVID HOLM; RONALD SANCHEZ; and DOES 1 through 10, individually, jointly and severally,<br><br>Defendants. | **CASE NO. 5:23-cv-1739**<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. Failure to Protect from Harm, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>2. Failure to Provide Medical Care, Fourteenth Amendment Violation (42 U.S.C. § 1983);<br>3. Deprivation of the Right to Familial Relationship with Decedent (42 U.S.C. § 1983);<br>4. Policies, Customs, Practices Causing Constitutional Violations (*Monell*, 42 U.S.C. § 1983);<br>5. Supervisory Liability Causing Constitutional Violations (Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983);<br>6. Negligence – Wrongful Death;<br>7. Negligence – Medical Malpractice;<br>8. Violation of California Government Code §845.6;<br>9. Violation of California Civil Code §52.1 (Tom Bane Act);<br>10. Intentional Infliction of Emotional Distress;<br>11. Declaratory Relief (28 U.S.C. § 2201)<br>12. Battery<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR DAMAGES**

**COME NOW** Plaintiffs ESTATE OF KAUSHAL NIROULA, by and through successors in interest, Radha Niroula and Krishna Niroula; RADHA NIROULA, individually; and KRISHNA NIROULA, individually, and allege as follows:

**I.**

**INTRODUCTION**

1.      This civil rights action seeks to establish the true and unequivocal facts surrounding the September 6, 2022 in-custody death of pretrial detainee Kaushal Niroula, a 41-year-old transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez, at the Cois M. Byrd Detention Center.  This action also seeks to bring to public light the deliberate disregard for safety and protection carried out by the individual defendants in the present action.

2.      Kaushal Niroula was the loving daughter of Radha Niroula and Krishna Niroula.  Kaushal's death has been a profound and unimaginable loss to her parents.  Since the date of her tragic death, Radha and Krishna's whole world has been turned upside down with their pain only intensifying as the days go on, and never subsiding.

3.      At the time of her death, Kaushal Niroula was a transgender female inmate who suffered from the debilitating effects of being HIV-positive, leaving her vulnerable and as prey to violent inmates.  On September 6, 2022, Kaushal Niroula was brutally and repeatedly beaten and strangled to death in her cell by her cellmate, Ronald Sanchez (hereinafter also "Inmate Sanchez"), who was a convicted sex offender.  Inmate Sanchez was known by the RCSD personnel to be aggressive and violent based on his violent history.  Inmate Sanchez was a known violent predator who preyed on the weak and the most vulnerable.  Because of these traits, and his tendency toward violence, the RCSD personnel knew that Inmate Sanchez posed an imminent threat of violence and harm to all other inmates in his immediate vicinity, and especially inmates like Kaushal Niroula.

4.    In 2022, eighteen (18) individuals died while incarcerated at the Riverside County Jails, the highest number for the County in the last fifteen (15) years.  In response to these alarming numbers, the California Department of Justice launched an investigation into the Riverside County Sheriff's Department's unconstitutional patterns and practices resulting in the record-breaking in-custody deaths.  The raw data and the per capita data make clear that the Riverside County Jails are a death sentence for any pretrial detainee.

5.    Long before Kaushal Niroula's death, each of the individually named defendants from the County of Riverside and the Riverside County Sheriff's Department knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the Riverside County correctional facilities, including Cois M. Byrd Detention Center, Robert Presley Detention Center, Larry D. Smith Correctional Facility, John J. Benoit Detention Center and the Blythe Jail.

6.    Long before the attack of Kaushal Niroula, the RCSD personnel knew that there existed at the Cois M. Byrd Detention Center a great indifference to the safety and protection of inmates, particularly mentally ill, homosexual, transgender and vulnerable inmates. This indifference consisted of a total disregard by the RCSD personnel for mentally ill, homosexual, transgender and vulnerable inmates who were susceptible to being preyed upon by violent predatory inmates, like Ronald Sanchez.

7.    The individuals named in the present lawsuit were repeatedly put on notice of the great dangers which existed within the Riverside County correctional facilities through the long history of in-custody deaths; the inmate-on-inmate violence which permeated the jails; the record-breaking amount of fentanyl overdoses throughout all Riverside County correctional facilities; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) (hereinafter the "*Gray* Class Action") targeting the Riverside County Sheriff's Department custody and medical staff's deliberate indifference to the safety and

1    protection of inmates; the warnings from neutrally-selected experts regarding the

2    Riverside County Sheriff's Department's custody and medical staff's failures

3    amounting to constitutional violations; a court ordered Consent Decree directing the

4    Riverside County Sheriff's Department to implement a Remedial Plan to meet the

5    minimum level of health care necessary to fulfill the Riverside County Sheriff's

6    Department's obligations under the Eighth and Fourteenth Amendments; and through

7    a voluntarily entered Settlement Agreement which required that the Riverside County

8    Sheriff's Department remedy all of the deficiencies addressed in the *Gray* class

9    action.

10   8.    Despite this long history of complete disregard to inmate safety and

11   protection, and history of inmate-on-inmate violence, each of the individually named

12   defendants in this lawsuit deliberately failed to take even modest actions to prevent

13   predatory behavior amongst inmates at the Riverside County correctional facilities.

14   Thus, by the time Kaushal Niroula was taken into custody and placed at the Cois M.

15   Byrd Detention Center, the jail was infested with endemic, ongoing and unabated

16   risks of injury or death to inmates – risks which indeed resulted in Kaushal Niroula's

17   death on September 6, 2022.  This due to the fact that violent inmates incarcerated at

18   the Riverside County correctional facilities knew that they could continue to prey on

19   the most vulnerable with no interference on part of the custodial staff or the

20   medical/mental health staff.

## II.

## <u>JURISDICTION AND VENUE</u>

23   9.    This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the

24   Fourth and Fourteenth Amendments to the United States Constitution, and the laws

25   and Constitution of the State of California. Jurisdiction is conferred upon this Court

26   by 28 U.S.C. §§ 1331 and 1343.

27   10.   This Court has the authority to grant the requested declaratory relief

28   pursuant to 28 U.S.C. §§ 2201, as well as Federal Rules of Civil Procedure 57,

**COMPLAINT FOR DAMAGES**

1    including pursuant to the Court's inherent equitable powers.

2    11.    Venue is proper within the Central District of California pursuant to 28

3    U.S.C. § 1391(b)(1) and (2) because all Defendants reside within this district and the

4    events and omissions giving rise to Plaintiffs' claims occurred within this district.

5    ### III.

6    ### PENDANT CLAIMS

7    12.    Plaintiffs have complied with the California Tort Claims Act

8    requirements with respect to their claims arising under state law.

9    13.    With respect to these supplemental state claims, Plaintiffs request that

10   this Court exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over such

11   claims as they arise from the same facts and circumstances which underlie the federal

12   claims.

13   ### IV.

14   ### PARTIES

15   **A. Plaintiffs**

16   14.    Decedent Kaushal Niroula was a 41-year-old transgender female, who

17   was the beloved daughter of Radha Niroula and Krishna Niroula. At the time of her

18   death, she was a pretrial detainee who resided in the County of Riverside, California.

19   The claims made by Plaintiff ESTATE OF KAUSHAL NIROULA, are brought by

20   the successors in interest, Radha Niroula and Krishna Niroula.

21   15.    Plaintiff RADHA NIROULA, is and was, at all times relevant hereto,

22   the natural mother of decedent Kaushal Niroula, and at all times relevant hereto was a

23   resident of the County of Riverside, California. Plaintiff brings these claims pursuant

24   to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which

25   provide for survival and wrongful death actions. Plaintiff also brings her claims

26   individually and on behalf of decedent Kaushal Niroula on the basis of 42 U.S.C. §§

27   1983 and 1988, the United States Constitution, federal and state civil rights law and

28   California law. Plaintiff also brings these claims as a Private Attorney General, to

**COMPLAINT FOR DAMAGES**

vindicate not only her rights, but others' civil rights of great importance.

16.     Plaintiff KRISHNA NIROULA, is and was, at all times relevant hereto, the natural father of decedent Kaushal Niroula, and at all times relevant hereto was a resident of the County of Riverside, California. Plaintiff brings these claims pursuant to California Code of Civil Procedure §§ 377.20 et seq. and 377.60 et seq., which provide for survival and wrongful death actions. Plaintiff also brings his claims individually and on behalf of decedent Kaushal Niroula on the basis of 42 U.S.C. §§ 1983 and 1988, the United States Constitution, federal and state civil rights law and California law. Plaintiff also brings these claims as a Private Attorney General, to vindicate not only his rights, but others' civil rights of great importance.

**B. Defendants**

17.     Defendant COUNTY OF RIVERSIDE (hereinafter also "COUNTY") owns, operates, manages, directs and controls Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT (hereinafter also "RCSD"), also a separate public entity, which employs other Doe Defendants in this action. At all times relevant to the facts alleged herein, Defendant COUNTY was responsible for assuring that the actions, omissions, policies, procedures, practices and customs of its employees, including RCSD employees and the Correctional Health Services (hereinafter also "CHS") employees, complied with the laws and the Constitutions of the United States and of the State of California.  Defendant COUNTY, through RCSD and CHS, is and was responsible for ensuring the protection and safety of all persons incarcerated at the RCSD correctional facilities, including the Cois M. Byrd Detention Center (hereinafter "CBDC"), Robert Presley Detention Center (hereinafter "RBDC"), Larry D. Smith Correctional Facility (hereinafter "LSCF"), John J. Benoit Detention Center (hereinafter "JBDC"), and the Blythe Jail (hereinafter collectively "COUNTY Jails").

18.     Defendant CHAD BIANCO ("SHERIFF BIANCO"), at all times mentioned herein, is and, since November 6, 2018, has been the Sheriff-Coroner of Defendant COUNTY OF RIVERSIDE, the highest position in the COUNTY Jails.

**COMPLAINT FOR DAMAGES**

As Sheriff, Defendant BIANCO is and was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all COUNTY Jails' employees and/or agents. Defendant SHERIFF BIANCO is and was charged by law with oversight and administration of the COUNTY Jails, including ensuring the safety of the inmates housed therein. Defendant SHERIFF BIANCO also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the COUNTY Jails alleged herein were committed. Defendant SHERIFF BIANCO is being sued in his individual and official capacities.

19.     Defendant EDWARD DELGADO ("DELGADO"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Assistant Chief of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant DELGADO was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant DELGADO was responsible for the  general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate only to the Sheriff and/or Undersheriff. Defendant DELGADO is being sued in his individual capacity.

20.     Defendant JAMES KRACHMER ("KRACHMER"), at all times mentioned herein, was employed by Defendant COUNTY as the Corrections Chief Deputy of the COUNTY Jails, including the CBDC, for the COUNTY, and he was acting within the course and scope of that employment. In that capacity, Defendant KRACHMER was a policy making official for the COUNTY OF RIVERSIDE. During the relevant time period, Defendant KRACHMER was responsible for the general management and control of the COUNTY Corrections Operations, with primary authority and responsibility for the operations, staff assignments, program

development, personnel supervision and training, maintenance and auxiliary inmate services at the jail, subordinate to the Corrections Assistant Chief, Defendant EDWARD DELGADO. Defendant KRACHMER is being sued in his individual capacity.

21.     Defendant DAVID HOLM (hereinafter also "HOLM") is and was at all times relevant herein the Corrections Captain at CBDC, one of the highest-level supervisory positions. During the relevant time period, Defendant HOLM was the Corrections Captain at CBDC, and was primarily responsible for assisting the Sheriff-Coroner with oversight and administration of the CBDC, including ensuring the safety of the inmates housed therein. As Corrections Captain, Defendant HOLM was responsible for supervision of RCSD and CHC employees and/or agents at the CBDC, and for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the RCSD and CHC's employees alleged herein were committed. Defendant HOLM also directly supervised Defendant DOES 9 and 10. Defendant HOLM is being sued in his individual capacity.

22.     Defendants COUNTY OF RIVERSIDE, RIVERSIDE COUNTY SHERIFF'S DEPARTMENT, SHERIFF BIANCO, DELGADO, KRACHMER and HOLM will hereinafter be referred to as the COUNTY DEFENDANTS.

23.     Plaintiffs are ignorant of the true names and capacities of Defendants DOES 1 through 10 ("DOE Defendants") and therefore sue these Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each Defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein. Plaintiffs will amend their complaint to state the names and capacities of each DOE Defendant when they have been ascertained.

24.     The identities, capacities, and/or nature of involvement of the defendants sued as DOES 1 through 10 are presently unknown to the Plaintiffs who therefore sue these defendants by fictitious names. Plaintiffs are informed, believe, and thereupon allege that DOES 1 through 10 include individual law enforcement personnel and

medical personnel employed by the RCSD and the COUNTY Correctional Health Services, and that they were involved in some manner and are legally responsible for the wrongful acts and conduct alleged herein. Plaintiffs will amend this complaint to substitute the DOE Defendants' true names and capacities when they have been ascertained. Plaintiffs are informed, believe, and thereupon allege that each DOE defendant is a resident of California. On information and belief, DOES 1 through10 were and still are residents of the County of Riverside, California. DOES 1 through 10 are sued in both their individual and official capacities.

25.     Defendants DOES 1 through 10, at all times relevant hereto, were RCSD custody personnel, CHC personnel, deputies, sergeants, lieutenants, and/or captains of the RCSD, and at all times herein were acting under the color of law.  Said defendants were assigned to work at the COUNTY Jails and were responsible for carrying out RCSD and CHC policies and procedures and for ensuring the safety of inmates at the COUNTY Jails.  Said defendants were assigned to work as the custodial and medical/mental health staff for the COUNTY Jails, including the CBDC, on September 6, 2022; were responsible for the proper housing and classification of CBDC inmates, including decedent Kaushal Niroula and Inmate Sanchez and other CBDC inmates, and were responsible for the safety of inmates housed at the COUNTY Jails and the CBDC, the periodic cell checks of CBDC inmates, the supervision of CBDC inmates, the prevention of access to intoxicants by CBDC inmates,  the provision of mental health care services to CBDC inmates, and, in general, the protection of CBDC inmates, including decedent Kaushal Niroula, as well as the promulgation of the policies, procedures, and allowance of the practices and customs, pursuant to which the acts of the employees of CBDC, alleged herein, were committed. Said defendants also were either present at the classification meeting when it was decided that decedent Kaushal Niroula would be housed with Inmate Sanchez, or were notified of the decision, and failed to override it, in-effect approving of it.   Said defendants are being sued in their individual capacities.

26.     At all relevant times, DOES 7 and 8 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY Correctional Health Services. At the time of the incident, DOES 7 and 8 were acting under color of law within the course and scope of their duties as employees for the COUNTY Correctional Health Services. They had supervisorial authority over DOES 1-10, and the COUNTY Correctional Health Services employees at the COUNTY Jails. DOES 7 and 8 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

27.     At all relevant times, DOES 9 and 10 were managerial, supervisorial, training, and/or policymaking employees of Defendant COUNTY. At the time of the incident, DOES 9 and 10 were acting under color of law within the course and scope of their duties as employees for the RCSD and/or the COUNTY. They had supervisorial authority over DOES 1-10, and the employees of the RCSD. DOES 9 and 10 were acting with the complete authority and ratification of their principal, Defendant COUNTY.

28.     Plaintiff is informed and believes, and thereupon alleges, that at all times mentioned herein Defendants SHERIFF BIANCO, DELGADO, KRACHMER and HOLM and DOES 1 through 10, inclusive, were employees, agents and/or servants of the COUNTY, acted within the course and scope of said employment, agency and/or service, and possessed the power and authority and were charged by law with the responsibility to enact policies and to prescribe rules and practices concerning the operation of the COUNTY Jails, including the CBDC, and concerning the means by which the life and safety of arrestees and detainees were to be secured, what criteria were to be used for placing arrestees and detainees together in custody, what methods of placement of an arrestee or detainee in a jail cell were appropriate to safeguard the life and safety of the arrestee or detainee, the manner in which threats to the life and safety of an arrestee or detainee were to be evaluated and acted upon, what safeguards were to be in place to prevent inmates, arrestees or detainees who posed a threat to

others in the facility from being permitted physical access to those others, what actions were to be taken when an arrestee or detainee is attacked or injured while incarcerated within the COUNTY Jails, and what methods of surveillance were to be used within each detention facility to insure immediate response to and prevention of incidents of violence occurring within jail cells.

29.    Each of the defendants, including the DOE defendants, caused, and is responsible for, the unlawful conduct and resulting injuries suffered by Plaintiffs by, among other things, personally participating in the unlawful conduct, acting jointly, or conspiring with others who did so; by ordering, authorizing, acquiescing in, or setting in motion policies, plans, or actions that led to the unlawful conduct, by failing to take action to prevent the unlawful conduct; by failing and refusing to initiate and maintain adequate training and supervision; by failing to enact policies to address the constitutional rights of protesters despite the obvious need for such a policy; and by ratifying the unlawful conduct that occurred by agents and officers under their direction and control, including failing to take remedial or disciplinary action.

30.    Plaintiffs are informed and believe and thereon allege that each of the Defendants was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the things herein alleged, was acting within the course and scope of that relationship. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and/or authorized the acts or omissions of each Defendant as alleged herein, except as may be hereinafter specifically alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and decedent Kaushal Niroula's constitutional rights and other harm.

///

31.     Plaintiffs are informed, believe, and thereupon allege that, at all times relevant hereto, Defendants, and each of them, acted as the agents, servants, and employees of each of the other defendants.

32.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted within the course and scope of their employment.

33.     In doing each of the acts and/or omissions alleged herein, Defendants, and each of them, acted under color of authority and/or under the color of law.

## V.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

34.     Upon information gathered from the Riverside County Sheriff's Department, Coroner's Investigative Narrative, the following events led to the gruesome assault of Ms. Niroula:

35.     On September 6, 2022, at 12 p.m., Kaushal Niroula (hereinafter also "Ms. Niroula" or "Decedent") and her cellmate Ronald Sanchez exited their shared cell for dayroom time. [1]

36.     Minutes later, Ms. Niroula returned to the cell alone.  Inmate Sanchez would soon follow after the dayroom time was over.  Upon information and belief, it was at this time that Inmate Sanchez commenced the brutal attack upon Ms. Niroula.

37.     At 1:27 p.m., all cell doors once again opened for dayroom time.  While other inmates exited their cells, there was no sighting of Ms. Niroula and Inmate Sanchez exiting their cell.  In fact, the surveillance video footage showed their cell

---

[1] Notably, despite the fact that Ms. Niroula was a transgender HIV positive female inmate whose transition was so far along that she indeed had breasts, Ms. Niroula was housed in a two-person cell with Inmate Sanchez who was a convicted sex offender. Indeed, prior to murdering Ms. Niroula, Inmate Sanchez had been incarcerated at the Riverside County correctional facilities for five years and had been awaiting trial on multiple charges of repeatedly sexually assaulting a Riverside area girl under 14 years old in 2009 and 2010.  *See* "Convicted Sex Offender Admits Killing Cellmate in Riverside Jail" (NBC Palm Springs News First, September 20, 2022), available at https://nbcpalmsprings.com/2022/09/20/convicted-sex-offender-admits-killing-cellmate-in-riverside-jail/

door being abruptly closed from the inside.  Upon information and belief, Inmate Sanchez closed the cell door to continue with the attack upon Ms. Niroula's person.

38.   Immediately thereafter, Inmate A was seen from the surveillance video walking by the cell and quickly walking away.  Upon information and belief, Inmate A observed Inmate Sanchez brutally beating and strangling Ms. Niroula.

39.   At 1:36 p.m., Inmate B was seen from the surveillance video[2] walking up to the cell and quickly walking away.  Upon information and belief, Inmate B observed Inmate Sanchez's ongoing and brutal beating and strangulation of Ms. Niroula.

40.   Upon information and belief, the prolonged beating and strangulation of Ms. Niroula caused such a commotion that it caught the attention of Inmate A, Inmate B and other inmates near the cell and in the dayroom.  Indeed, Ms. Niroula's body not only indicated strangulation, and a brutal and ongoing assault:

I. STRANGULATION:
   A. EXTERNAL, INTERNAL NECK, FACE INJURIES
      1. FOREHEAD, FACE, EYE PETECHIAE, FLORID
      2.  ANTERIOR/LEFT LATERAL NECK SKIN WITH ABRASIONS AND PETECHIAE
      3. RIGHT AND LEFT STERNOHYOID MUSCLE HEMORRHAGES
      4. RIGHT AND LEFT STERNOTHYROID MUSCLE HEMORRHAGES
      5. RIGHT AND LEFT SUPERIOR HORNS OF THE THYROID CARTILAGE, FRACTURES WITH HEMORRHAGES
      6. RIGHT CRICOTHYROID CARTILAGE FRACTURE WITH HEMORRHAGE
   B. OTHER FINDINGS:
      1. RIGHT RHOMBOID MUSCLE HEMORRHAGE
      2. LOWER – MIDBACK ERECTOR SPINAE MUSCLES AND FASCIA HEMORRHAGE
      3. DORSUM OF TONGUE, TIP SINGLE HEMORRHAGE
      4. RIGHT AND LEFT AXILLAE, BACK, TARDIEU TYPE SPOTS

II. OTHER INJURIES – NONLETHAL:
   A. RIGHT KNEE ABRASION
   B. LEFT KNEE CONTUSION
   C. RIGHT KNEE MEDIAL WRIST, ABRASION
   D. LEFT HAND DIGIT #3, SMALL CONTUSION
   E. RIGHT DORSUM HAND, WRIST, SMALL SCRATCHES

---

[2]  Surveillance videos serve as recording equipment that is critical to ensuring the welfare of inmates housed in jails. Yet, the RCSD custody staff failed to notice this alarming behavior that was easily observable had anyone been watching the surveillance video. The RCSD custody personnel charged with monitoring the housing module where Ms. Niroula was housed ignored their duties as the coroner's investigative narrative succinctly summarizes minute-by-minute what it is exactly that the custody staffer would have observed through the surveillance camera had they been doing their job. Upon information and belief, the RCSD custody personnel charged with those duties deliberately chose to ignore the footage from that surveillance camera.

**COMPLAINT FOR DAMAGES**

41.     At 2:07 p.m., Inmate Sanchez was seen from the surveillance video "high fiving" and shaking hands with other inmates.  Upon information and belief, the brutal and violent assault of Ms. Niroula had been planned for some time and was a coordinated effort by both RCSD inmates and custodial staff.[3]

42.     At 2:35 p.m., because Inmates C and D noticed that no RCSD custody staff came to help Ms. Niroula during the entire time[4] that she was beaten, assaulted and strangled in that shared cell with Inmate Sanchez, Inmates C and D decided that it was incumbent upon them to summon custody assistance.  When RCSD custody staff came to their cell, Inmate C and D informed them: "Heads up, I saw someone down in cell #34."

43.     Minutes later, RCSD custody staff approached the cell and Inmate Sanchez simply stated:  "[She] is dead, I killed [her], there is not else to say."

44.     The aforementioned facts where indeed presented to SHERIFF BIANCO during the Coroner's Review which was held on November 8, 2022:

Per video surveillance, On 09/06/2022, at 1200 hours, Niroula and her cellmate Ronald Sanchez (Sanchez) exited their shared cell #34 for dayroom time. Minutes after, Niroula returned to her cell alone. Once dayroom time was over, Sanchez returned to her cell. At 1327 hours, all cell doors opened again for dayroom time. For unknown reasons, cell #34 immediately closed their door from the inside and neither Niroula or Sanchez exited. During dayroom time an inmate from cell #35 walked by cell #34 and quickly walked away. At 1336 hours, an inmate from cell #42, walked up to cell #34 and also walked away. At 1407 hours, Sanchez was observed "high fiving" and shaking hands with other inmates.

On 09/06/2022, at about 1435 hours, inmates from cell #35 called into the pod and told correctional staff "heads up, I saw someone down in cell #34." At 1437 hours, Correctional Deputy Mendoza, ID #N7642, entered the dayroom and checked on cell #34. He noted Niroula was unresponsive. Sanchez stood by the door and told Correctional Deputy Mendoza, "he is dead, I killed him, there is nothing else to say." Medical aid was requested at day room #2. Medical personnel moved Niroula outside cell #34. Life saving measures were initiated by medical personnel. American Medical Response Paramedic Froman, #P25098, arrived on scene and pronounced Niroula dead at 1506 hours, citing obvious signs of death.

---

[3] Ms. Niroula was mysteriously killed just three days before her trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.
[4]  Upon information and belief, the assault went on for a minimum of sixty-eight minutes.

**COMPLAINT FOR DAMAGES**

45.     After the facts were presented, SHERIFF BIANCO certified the cause, manner and mode of death.

46.     Prior to decedent Kaushal Niroula's death, Defendants DOES 1 through 10 had failed to properly classify Inmate Sanchez.  Said defendants were aware of Inmate Sanchez's violent history, tendencies and propensities based on their interview of Inmate Sanchez and review of his medical and penal records.  Said defendants knew – or should have known – that Inmate Sanchez would attack or otherwise seriously injury and/or kill other inmates if Inmate Sanchez were not constantly monitored and housed in a high observation unit or other inmate housing which called for constant monitoring and isolation.  Despite this, said defendants improperly and deliberately housed Inmate Sanchez in a two-person cell with decedent Kaushal Niroula, knowing that this housing assignment would place decedent Kaushal Niroula at great risk of serious bodily injury or death.

47.     Furthermore, it was not reasonable, and in fact it was foreseeably dangerous, to house decedent Kaushal Niroula, transgender female, with Inmate Sanchez, a convicted sex offender with a violent history,  because there was a high probability based on Kaushal Niroula's transition into the female body and weakened and debilitated physical health due to being HIV positive that she would be preyed upon by Inmate Sanchez,  which carried a high probability of resulting in the murder of Kaushal Niroula given Inmate Sanchez's violent history.

48.     As such, Defendants DOES 1 through 10 were all on notice, that decedent Kaushal Niroula's housing assignment with Inmate Sanchez put Kaushal Niroula in great risk of death or serious bodily injury at the hands of Inmate Sanchez. In view of Kaushal Niroula's status as a transgender HIV positive female inmate, and the other circumstances described above and elsewhere in this complaint, the two-person cell with Inmate Sanchez was not an appropriate designation. Yet, with deliberate indifference and/or negligently, Defendants DOES 1 through 10 failed to ensure that Kaushal Niroula's status be changed to status which accommodated a

transgender HIV positive female inmate.    Said defendants, with deliberate indifference to the health, safety and welfare of Kaushal Niroula, failed to properly classify Inmate Sanchez as a high-risk violent inmate and to transfer or house Inmate Sanchez in a high observation unit or other housing assignment where Inmate Sanchez would not pose a risk/threat to other inmates.

49.    On September 6, 2022, Defendants DOES 1 through 5 were assigned as the floor deputies for CBDC housing module where decedent Kaushal Niroula and Inmate Sanchez shared a two-person cell. Defendants DOES 1 through 5 were responsible for conducting periodic cell checks, including inmate safety checks every 60 minutes, including the cell where Kaushal Niroula was savagely beaten by Inmate Sanchez, and were responsible generally for protecting the inmates under their care from assault, including Kaushal Niroula.

50.    Defendants COUNTY, RCSD, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 1 through 10, which included RCSD custodial and CHC medical/mental health staff of CBDC, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, protection and constitutional and statutory rights of decedent Kaushal Niroula and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things,

a. Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities due to their sexual orientation, gender identity, medical/mental health conditions, and disabilities;

b. Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c. Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the

following: separation of detainees and arrestees from potentially violent or dangerous inmates; use of security cameras to monitor violence within jail cells; training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

d. Failing to adequately train, supervise, and control deputies in the arts of law enforcement;

e. Failing to adequately discipline deputies involved in misconduct; and

f. Condoning and encouraging deputies in the belief that they can violate the rights of persons such as the Plaintiffs in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

51.  Defendants COUNTY, RCSD, SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 1 through 10 acted with deliberate indifference and reckless disregard toward decedent Kaushal Niroula's right to be protected and safe while housed at CBDC, and afforded due process of law, by among other things, the following acts:

a. Placing Kaushal Niroula, a transgender HIV positive female inmate, in a cell with inmates and/or arrestees whom Defendants knew or should have known had propensities for aggressive acts or acts of violence and mental instabilities, and not watching and protecting him;

b. Failing to properly classify and house Inmate Sanchez as a violent inmate in a high observation unit or otherwise house and classify Inmate Sanchez in appropriate housing where he could be constantly monitored and/or isolated from other inmates;

c. Placing Kaushal Niroula, a transgender HIV positive female inmate, in a cell with other detainees, arrestees and inmates under circumstances which were conducive to the eruption of violence, including in a unit with violent and dangerous inmates like Inmate Sanchez;

d.  Causing Kaushal Niroula to remain in the cell with other inmates after Defendants knew that physical violence was imminent; and

e.  Not observing or protecting Kaushal Niroula, or otherwise standing by and allowing a brutal beating on Kaushal Niroula by another inmate to continue for an unreasonable period of time, resulting in death to Kaushal Niroula.

52.  Plaintiffs are informed and believe that Defendants DOES 1 through 10 were aware of the threat the other inmate or inmates represented to decedent Kaushal Niroula based on the inmates' criminal histories or exhibited violent tendencies of which the deputies and other employees knew or should have known. Said defendants intentionally, recklessly and with deliberate indifference, failed to take any security measures to protect detainees and arrestees who were unable to defend themselves - such as Kaushal Niroula, a transgender HIV positive female inmate, in a cell with other detainees, who was unable to care for herself from inmates with violent tendencies like Inmate Sanchez.

53.  Plaintiffs are informed and believe, and on the basis of such information and belief alleges, that Defendants COUNTY and RCSD ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiffs.

54.  Plaintiffs are informed and believe that the brutal beating was perpetrated by one or more inmates at the jail acting with the approval of RCSD custody personnel and CHC medical personnel, or because of the deliberate indifference, gross negligence or reckless disregard of Defendants DOES 1 through 10 to the safety and security of decedent Kaushal Niroula.

**COMPLAINT FOR DAMAGES**

55.     Plaintiffs are informed and believe that Defendants DOES 1 through 10 recklessly and with deliberate indifference, failed to immediately and appropriately respond to the brutal attack and allowed the attack to continue for an extended period of time, causing the death of Kaushal Niroula.

56.     Plaintiffs are informed and believe that RCSD custody personnel and CHC medical personnel, intentionally, recklessly and with deliberate indifference, failed to take immediate action to summon medical care for Kaushal Niroula, despite knowing she was in need of immediate medical care.

57.     Defendants have been on notice for years that their provision of medical and mental health treatment to inmates is inadequate and results in needless harm and death.

58.     Welfare and safety checks by custody and mental health staff, when done correctly, are an important part of protecting inmates in the COUNTY Jails from harm, including inmate on inmate violence. Defendants knew that health and welfare checks conducted in units were part of violence prevention programs and that such checks were necessary for inmate-on-inmate attack prevention.

59.     Prior to the murder of Kaushal Niroula on September 6, 2022, Defendants were aware that there was a problem with RCSD custody personnel and CHC medical personnel failing to actually perform required welfare and safety checks in the units at the COUNTY Jails, including CBDC, failing to perform adequate welfare and safety checks and/or failing to take adequate measures after observing violent during the welfare and safety checks.

60.     Defendants' actions and omissions, as herein above recited, directly placed decedent Kaushal Niroula at substantial risk of the grievous and tragic harm that ultimately occurred resulting in her death.

61.     Plaintiffs timely and properly filed tort claims with the County of Riverside pursuant to California Government Code sections 910, *et seq*., and this action is timely filed within all applicable statutes of limitation.

62.    This complaint may be pled in the alternative pursuant to Federal Rule of Civil Procedure 8(d).

## VI.

## FACTUAL ALLEGATIONS COMMON TO *MONELL* AND SUPERVISORIAL CAUSES OF ACTION

63.    Based upon the principles established in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), Defendants are liable for all injuries sustained by Plaintiffs as set forth herein. To establish municipal liability under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), a plaintiff must prove: (1) that [the plaintiff] possessed a constitutional right of which she was deprived; (2) that the municipality had a policy/custom/practice; (3) that this policy/custom/practice amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy/custom/practice is the moving force behind the constitutional violation. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir, 2011). The policy/custom/practice "need only cause the constitutional violation; it need not be unconstitutional per se." *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994). Recognized paths to *Monell* liability include: (1) an unconstitutional custom, practice or policy behind the violation of rights; (2) a deliberately indifferent omission, such as a failure to train or failure to have a needed policy; and (3) a final policy-maker's involvement in or ratification of the conduct underlying the violation of rights. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249-1250 (9th Cir. 2010).

**A. The COUNTY Jails Experienced Their Deadliest Year in 2022.**

64.    In 2022, Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails have resulted in eighteen (18) in-custody deaths. Prior to 2022, Riverside County had not logged more than twelve (12) such deaths in any year since 2005.[5]

---

[5] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at

**COMPLAINT FOR DAMAGES**

65.     Kaushal Niroula's death is one of eighteen (18) in-custody deaths within the COUNTY Jails during the 2022 calendar year, and was the thirteenth death that year:

    a.  Alicia Upton (Date of Loss: April 28, 2022; Manner of Death: "Suicide")

    b.  Abel Valencia Cruz (Date of Loss: May 1, 2022: Manner of Death: "Natural")

    c.  Justin Kail (Date of Loss: May 17, 2022; Manner of Death: "Accident-Overdose")

    d.  Brawn Lamar Hampton (Date of Loss: May 26, 2022; Manner of Death: "Natural")

    e.  Michael Vasquez (Date of Loss: May 26, 2022; Manner of Death: "Accident-Overdose")[6]

    f.  Yareth Villagomez (Date of Loss: June 20, 2022; Manner of Death: "Accident-Overdose")

    g.  Richard Edward Biscotti (Date of Loss: July 11, 2022; Manner of Death: "Natural")

    h.  Richard Matus Jr. (Date of Loss: August 11, 2022; Manner of Death: "Accident-Overdose")

    i.  Abel Anthony Chacon (Date of Loss: September 6, 2022; Manner of Death: "Accident-Overdose")

    j.  Octavio Zazueta (Date of Loss: August 26, 2022; Manner of Death: "Accident-Overdose")

    k.  Gary Roy Haneline (Date of Loss: August 27, 2022; Manner of Death:

---

https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[6] Pretrial detainee Michael Vasquez was just 20 years old at the time of his death.  He had been in the facility for only six days prior to being exposed to the dangers and risks permeating the CBDC, all of which ultimately resulted in his death.

**COMPLAINT FOR DAMAGES**

"Natural")

l.  Mario Solis (Date of Loss: September 3, 2022; Manner of Death: "Accident")[7]

m.  Kaushal Niroula (Date of Loss: September 6, 2022; Manner of Death: "Strangulation")[8]

n.  Robert Louis Robinson (Date of Loss: September 7, 2022; Manner of Death: "Suicide/Hanging")

o.  Ulyses Munoz Ayala (Date of Loss: September 29, 2022; Manner of Death: "Homicide Willful")[9]

p.  Cynthia Heredia (Date of Loss: October 13, 2022; Manner of Death: "Pending")

q.  Katie Patton (Date of Loss: November 20, 2022 Manner of Death: "Pending")

r.  Ronald Cook (Date of Loss: December 12, 2022 Manner of Death: "Pending")

66.  The deaths include six (6) overdoses, two (2) homicides resulting from inmate-on-inmate violence, three (3) suicides, four (4) natural cause deaths, and three

---

[7] Notably, while the COUNTY DEFENDANTS have reported to the Department of Justice that pretrial detainee Mario Solis' death was an "accident," what is known through the Coroner's Investigative Narrative and Autopsy Report is that Mr. Solis was indeed in a safety cell (*i.e.*, cells intended for suicidal inmates) an ingested multiple foreign objects, including a pencil, toothbrush, and plastic bags with soap.  Mr. Solis ultimately died due to the pencil puncturing his right jugular vein. Upon information and belief, the COUNTY DEFENDANTS have attempted to classify this death as an "accident" in an effort to absolve themselves from liability arising from a *suicidal* pretrial detainee who is housed in a safety cell, but is nevertheless able to access such hazardous objects to commit suicide.  What is more is that Mr. Solis' family was not notified about his death until six (6) days had passed.

[8]  Decedent Kaushal Niroula was a transgender HIV-positive female inmate, who was brutally and repeatedly beaten and strangled by her cellmate, Ronald Sanchez—a convicted sex offender.  Ms. Niroula was killed just three days before trial. Upon information and belief, Ms. Niroula had been assisting state and federal authorities to help uncover the illegal wiretapping at the COUNTY Jails.

[9]  Pretrial detainee Ulyses Munoz Ayala was brutally killed by a *known* violent inmate, Erik Martinez, whom he was forced to share a cell with.  *See* "Corona Man Killed In Riverside County Jail Cell" (The Sun, September 30, 2022), available at https://www.sbsun.com/2022/09/30/corona-man-killed-in-riverside-county-jail-cell/

1   (3) pending.  Seven (7) of the in-custody deaths have occurred at the Cois M. Byrd

2   Detention Center in Murrieta, California.

3        67.    The Defendants' deliberate indifference towards protecting pretrial

4   detainees from hazards resulted in illegal drugs permeating the COUNTY Jails.

5   According to Defendant KRACHMER, from November 2021 through November

6   2022, the COUNTY Jails experienced 140 overdoses, with inmates overdosing at

7   least twice a week within the COUNTY Jails.[10]

8        68.    The Defendants' deliberate indifference towards pretrial detainees

9   suffering from mental health issues resulted in several completed and attempted

10  suicides.  On November 23, 2022, pretrial detainee Charles Wall attempted suicide by

11  jumping off the top tier of his housing module at RPDC.  From November 19, 2022

12  through November 23, 2022, Mr. Wall made repeated requests for psychiatric care

13  and medication.  Mr. Wall suffered from schizophrenia and suicidal ideations, which

14  was known to the COUNTY custody and medical staff given his prior attempts to

15  commit suicide at RPDC in 2015, as well as his extensive medical and mental health

16  history.  These requests were ignored by the custody and medical staff. On November

17  23, 2022, Mr. Wall pled with a custody staffer, begging for an opportunity to speak

18  with a psychiatrist.  The custody staffer demanded to know why Mr. Wall needed to

19  speak with a psychiatrist.  When Mr. Wall hesitated, the custody staffer shouted, "Do

20  what you gotta do! Stop pushing my fucking buttons or you're gonna give me a

21  reason to come in!" Shortly thereafter, Mr. Wall attempted suicide by jumping off the

22  second story of his housing module.

23  **B. The COUNTY Jails Are On Track to Surpass the Number of In-Custody**

24  **Deaths in 2023.**

25

26  ───────────────

27  [10] *See* "Families Question Suspected Fentanyl Deaths of Loved Ones Behind Bars; Riverside Co.
    Sheriff Reacts" (Fox11 News, November 7, 2022), available at

28  https://www.foxla.com/news/fentanyl-responsible-for-a-third-of-riverside-county-jail-deaths-in-
    2022-families-demand-answers

69.     Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT'S COUNTY Jails will have the deadliest year in 2023 – surpassing the eighteen (18) in-custody deaths from 2022.

70.     As of May of 2023, the COUNTY has already claimed the lives of six (6) persons who died while in the custody of the COUNTY:

a.   On January 12, 2023, pretrial detainee Mark Spratt died as a result of injuries he suffered during a brutal attack by his cellmate at CBDC.  Mr. Spratt was only 24 years old at the time of his death.

b.   On February 5, 2023, pretrial detainee Christian Viramontes was found unresponsive in his cell at RPDC.  Upon information and belief, Mr. Viramontes' death was caused by hazards permeating the RPDC.  Mr. Spratt was only 26 years old at the time of his death. An investigation into the manner and means of death remains pending.

c.   On February 6, 2023, pretrial detainee Jesus Rodriguez died in-custody due to injuries suffered during an arrest.  An investigation into the manner and means of death remains pending.

d.   On February 21, 2023, pretrial detainee Christian Drye died in-custody at a COUNTY hospital due to injuries suffered during an arrest.  An investigation into the manner and means of death remains pending.

e.   On March 11, 2023, an unidentified pretrial detainee was found unresponsive in his cell at CBDC.  Upon information and belief, the death was caused by hazards permeating the CBDC.  An investigation into the manner and means of death remains pending.

f.   On May 27, 2023, pretrial detainee Ruben Guzman died following an undisclosed incident at JBDC. Upon information and belief, Mr. Guzman received numerous threats to his life by inmates and custody staff at the COUNTY Jails. Mr. Guzman was in fear of his life and attempted suicide by jumping off of a top tier at the COUNTY Jails.  Mr.

Guzman survived the attempted suicide and was told by custody staff: "You should have gone headfirst." Upon information and belief, Mr. Guzman was found unresponsive in a holding cell on May 22, 2023.  He died four days later on May 27, 2023.  An investigation into the manner and means of death remains pending.

g. On July 5, 2023, Astrid Johnson, a 62-year-old ~~man~~ female inmate housed in the JBDC, died in-custody.  Upon information and belief, RCSD personnel and CHC medical personnel failed to provide Ms. Johnson with adequate medical care.  An investigation into the manner and means of death remains pending.

h.  On August 14, 2023, an unidentified 71-year-old pretrial detainee male was found unresponsive in his cell at JBDC.  Upon information and belief, the death was caused by hazards permeating the JBDC.  An investigation into the manner and means of death remains pending.

71.    The Defendants' deliberate indifference towards protecting pretrial detainees from violence has resulted in numerous deaths and assaults at the COUNTY Jails. Upon information and belief, this indifference has resulted in the 2022-2023 deaths of Kaushal Niroula, Ulyses Munoz Ayala, Mark Spratt, and Ruben Guzman, and the brutal sexual assault of a pretrial detainee in April of 2023 at the COUNTY Jails.

**C. RCSD Refuses to Comply with California Department Justice Mandates Regarding In-Custody Death Reporting Abating Transparency and Accountability.**

72.    Despite the record-braking in-custody deaths at the COUNTY Jails, and the suspicious circumstances surrounding the in-custody deaths, the COUNTY DEFENDANTS have refused to adhere to state mandates and regulations which were explicitly created to ensure accountability and transparency, including California

Government Code section 12525[11] and Title 15 Minimum Standards for Local Detention Facilities, section 1046 Death in Custody.[12]

73.    The COUNTY DEFENDANTS have refused to comply with these mandates which were enacted to provide transparency and accountability when inmates and prisoners die in-custody within California correctional facilities.

74.    The COUNTY DEFENDANTS reported some of the in-custody deaths six weeks after they occurred, despite the 10-day mandate. [13]

75.    The COUNTY DEFENDANTS provided inaccurate information to the Department of Justice, classifying the pretrial detainees, who had died in their custody as "sentenced" post-convicted prisoners. [14] Upon information and belief, this orchestrated misclassification of the pretrial status of the decedents was done purposely by the COUNTY DEFENDANTS so as to impose the Eighth Amendment higher degree of culpability standard, rather than the less stringent Fourteenth Amendment degree of culpability.[15]

---

[11] *See* Cal. Gov. Code § 12525 ("In any case in which a person dies while in the custody of any law enforcement agency or while in custody in a local or state correctional facility in this state, the law enforcement agency or the agency in charge of the correctional facility shall report in writing to the Attorney General/DOJ, within 10 days after the death, all facts in the possession of the law enforcement agency or agency in charge of the correctional facility concerning the death.")

[12]  *See* Title 15 Minimum Standards for Local Detention Facilities, Section 1046 Death ("The facility administrator, in cooperation with the health administrator, shall develop written policy and procedures to ensure that there is an initial review of every in-custody death within 30 days. The review team shall include the facility administrator and/or the facility manager, the health administrator, the responsible physician and other health care and supervision staff who are relevant to the incident.")

[13] *See* "Riverside Sheriff Failed to Report Inmate Deaths to State On time; Names of Dead Made Public" (Desert Sun, September 16, 2022), available at https://www.desertsun.com/story/news/crime_courts/2022/09/16/riverside-county-sheriffs-failed-report-inmate-deaths-state-time/8017820001/

[14] *Id*.

[15] Pretrial detainees are perceived as innocent under the eyes of the law.  Because they are mere detainees who are simply awaiting their day in court, the Constitution mandates that additional protective measures be put in place to ensure that the detainees are not harmed while in the government's custody.  More specifically, the 14th Amendment requires that correctional facilities not be deliberately indifferent towards the detainees' safety and protection.  *See Gordon v. County of Orange*, 888 F.3d 1118 (9th Cir. 2018). Once an inmate has been formally convicted of a crime, they are deemed to be a post-conviction prisoner.  While the Constitution too protects post-

**D. California Department of Justice Launches Patterns and Practices Investigation into Recording Breaking In-Custody Deaths at the COUNTY Jails.**

76.    On February 23, 2023, the California Department of Justice (DOJ) announced its decision to launch a formal investigation into Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's unconstitutional patterns and practices resulting in record-breaking in-custody deaths at the COUNTY Jails and the use of excessive force by sheriff's deputies, disproportionately affecting Latino and African American communities.[16] The raw data and the per capita data make clear that the COUNTY Jails are a death sentence for any pretrial detainee, some of whom have died just days after being booked.[17]  For reference, San Diego County had 19 in-custody deaths in 2022, despite an average *daily* jail population of *500 more people than* Riverside County.

77.    During the press conference, the California Attorney General Rob Bonta expressed his grave concerns with regard to Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT: "All Californians deserve fairness and respect from the institutions that serve them […]. When some communities don't see or feel they are being treated equitably by law enforcement, it contributes to distrust and hurts public safety. Unfortunately, it is clear that — amid concerning levels of in-custody deaths

---

conviction prisoners, the 8th Amendment merely requires that the prisoners not be subjected to cruel and unusual punishment while in the government's custody. *See Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016).  The end result is that the legal standard under which a civil rights lawsuit is premised upon is much higher and more difficult to prove for a post-conviction prisoner (*i.e.*, subjective standard) rather than a pretrial detainee (*i.e.,* objective standard).  Upon information and belief, the COUNTY DEFENDANTS purposely classified the pretrial detainees as inmates who had already been "sentenced" in an effort to make it merely impossible for the families to establish liability because of the heightened standard of culpability imposed on civil rights cases filed by post-conviction prisoners.

[16] *See* State of California Department of Justice Press Release: "Attorney General Bonta Launches Civil Rights Investigation into Riverside County Sheriff's Office," February 23, 2023, available at https://oag.ca.gov/news/press-releases/attorney-general-bonta-launches-civil-rights-investigation-riverside-county

[17] *Id*.

and allegations of misconduct — too many families and communities in Riverside County are hurting and looking for answers. As part of my office's ongoing efforts to support constitutional policing, the California Department of Justice is opening a civil rights investigation into the Riverside County Sheriff's Office. Whether you have a loved one in jail or are worried about crime in your neighborhood, we all benefit when there is action to ensure the integrity of policing in our state."

78.     In response to the California Department of Justice's civil rights investigation in the COUNTY Jails, SHERIFF BIANCO issued the following offensive statement illustrating indifference towards the lives lost in his jails: "This investigation is based on nothing but false, and misleading statements, and straight-out lies from activists, including their attorneys. This will prove to be a complete waste of time and resources."[18]

**E. RCSD's History of Indifference Towards Inmates Incarcerated at the COUNTY Jails.**

79.     For well over a decade now, the COUNTY's own Grand Jury, as well as several independent auditors, have come to the same conclusion: dangerous deficits in health care services at the jails threaten the lives and health of the thousands of men and women they hold.

80.     The "2010-11 Grand Jury Report: Riverside County Detention Health Care Administration" found systemic failures in treatment, medication management, record-keeping, and administration of forced medications, among other areas. [19]

///

///

///

---

[18] *See* Riverside County Sheriff's Department YouTube video titled: "Sheriff Bianco's Response to Frivolous Civil Rights Investigation by DOL" (February 23, 2023), available at https://www.youtube.com/watch?v=6ttMVVLyfaQ

[19] *See* 2010-2011 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2010-2011/11mentalhealth_detentionserv.pdf

**COMPLAINT FOR DAMAGES**

81.     The Grand Jury released an updated report in June 2012, noting that mental health staffing had in fact decreased since its prior year's report. [20]

82.     On March 8, 2023, the federal class action lawsuit *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) was filed against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. The class action alleged that the COUNTY failed to provide minimally adequate medical and mental health care to the people incarcerated in its jails, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  The class action also alleged discrimination against certain inmates with disabilities in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

83.     The *Gray* operative complaint (Dkt. 150) alleged the following unconstitutional patterns and practices permeating the COUNTY Jails:

    a.   RCSD, by policy and practice, maintains and runs a health care system that lacks basic elements necessary to provide constitutional care;

    b.    RCSD, by policy and practice, systematically fails to identify and diagnose serious conditions, to provide timely care, to administer appropriate medications, to employ adequate staff to meet inmates' basic needs, to maintain records that allow informed treatment decisions, to establish legally required confidentiality, and to identify and correct its own failings;

    c.   RCSD, by policy and practice, maintains and runs substandard medication management and administration;

    d.   RCSD, by policy and practice, is severely understaffed at the COUNTY Jails;

---

[20] *See* 2011-2012 Grand Jury Report re: Detention Mental Health Services, available at https://rivco.org/sites/g/files/aldnop116/files/Past%20Reports%20%26%20Responses/2011-2012/12mentalhealthdetention.pdf

**COMPLAINT FOR DAMAGES**

1       e.   RCSD, by policy and practice, provides substandard medical care to

2             inmates;

3       f.   RCSD, by policy and practice, provides substandard mental health care

4             to inmates;

84.    On September 2, 2014, the Court granted Plaintiffs' Motion for Class Certification.

85.    On February 20, 2015, the parties agreed to hire neutral experts to determine whether the health care provided at the COUNTY Jails posed a significant risk of serious harm to inmates confined in the COUNTY Jails and, if so, to make recommendations for improvements that will provide the minimum care guaranteed by the United States Constitution.

86.    On July 15, 2015, the neutrally-appointed experts issued reports, determining that the health care failed to meet the constitutional minimum.  As such, the parties agreed to negotiate a Remedial Plan to address the identified deficiencies in the expert reports.

87.    Due to the COUNTY DEFENDANTS' ongoing failures to comply with the Consent Decree, Plaintiffs in the *Gray* class action have had to seek emergency relief from the Court to ensure that the Consent Decree is enforced.

**F. Sheriff Bianco's Indifference to the Constitutional Violations and Failures Permeating His COUNTY Jails.**

88.    A County Sheriff, like SHERIFF BIANCO "may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011). This causal connection can exist either "by setting in motion a series of acts by others or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury." *Id*. at 1207–08. Ninth Circuit has long held

that a supervisor "need not be 'directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury.'" *Id*. at 1205-06 (9th Cir. 2011), cert. den'd, 132 S. Ct. 2101 (2012) (quoting *Larez v. City of Los Angeles*, 946 F.2d 630, 645-46 (9th Cir. 1991)). "Rather, the supervisor's participation could include his 'own culpable action or inaction in the training, supervision, or control of his subordinates,' 'his acquiescence in the constitutional deprivations of which the complaint is made,' or 'conduct that showed a reckless or callous indifference to the rights of others.'" *Id*. "We have never required a plaintiff to allege that a supervisor was physically present when the injury occurred." *Id*.

89.     The endemic, ongoing and unabated risks of injury or death to inmates incarcerated in the COUNTY Jails are well established. SHERIFF BIANCO has long been aware of these risks and harms which have resulted in injury and death to inmates incarcerated in his COUNTY Jails.  SHERIFF BIANCO's failure to take action to ameliorate these conditions constitutes deliberate indifference to the safety and health of inmates incarcerated in his COUNTY Jails.

90.     SHERIFF BIANCO has made several public statements all of which serve as illustrations of his great indifference towards the inmates, most of whom are pretrial detainees and innocent under the eyes of the law, who are in the government's custody in his COUNTY Jails.

91.     Despite the alarming trends in overdoses and in-custody deaths, SHERIFF BIANCO blames the decedents and their families for the in-custody deaths and overdoses in the COUNTY Jails – all of which are fully controlled and managed by him.

92.     On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other

1  Riverside County inmates this year, Sheriff Chad Bianco explained how they died." [21]

2       93.    Within fourteen hours of article being posted on Facebook, SHERIFF

3  BIANCO went on to publicly shame and harass

4  the families and their deceased loved ones,

5  posing the following offensive rhetorical

6  questions to the Facebook community and

7  calling the Matus family attorney, Christian

8  Contreras, a "bad" person: [22]



9      (1)    Did they demand that their family

10          members not commit suicide or

11          consume drugs while they were in

12          custody?

13      (2)    Did they ever demand that their

14          family members not commit crimes

15          in the first place?

16      (3)    Did their parents ever demand they

17          take responsibility for their own

18          actions?

19

20

---

21  [21] *See* "Sheriff Explains How 13 Riverside County Inmates Died This Year" (The Press-Enterprise

22  Facebook Page, September 16, 2022), available at:
https://www.facebook.com/page/50855317267/search/?q=chad%20bianco%2013%20riverside%20
county%20inmates%20died

23  [22] Notably, SHERIFF BIANCO deleted the post thereafter.  SHERIFF BIANCO did this despite the

24  post being highly relevant and material to Plaintiffs' supervisorial claims against him. This is
textbook definition of spoliation.  Courts generally agree that the duty to preserve is triggered as

25  soon as a potential claim is identified. *Apple Inc. v. Samsung Electronics Co., Ltd.*, 888 F. Supp. 2d
976, 991 (N.D. Cal. 2012) ("duty to preserve material evidence arises not only during litigation but

26  also extends to that period before the litigation when a party reasonably should know that the
evidence may be relevant to anticipated litigation"); *Colonies Partners, L.P. v. County of San*

27  *Bernardino*, 2020 WL 1496444, at *6-7 (C.D. Cal. 2020), report and recommendation adopted,
2020 WL 1491339 (C.D. Cal. 2020).  Spoliation is "the destruction or significant alteration of

28  evidence, or the failure to preserve property for another's use as evidence, in pending or future

**COMPLAINT FOR DAMAGES**

1    (4)    Do they ever think they played a huge part in the situation they find
2          themselves in, other than the personal actions of their deceased loved one?

3    94.    SHERIFF BIANCO also blames the inmates themselves:  "There are

4 inmates that purposely get arrested just to smuggle drugs into jail. It is either for

5 money, money on the outside, money or favor on the inside […] It's part of that

6 culture of power inside the jails, and drugs are a part of it." [23]

7    95.    In response to the Department of Justice's recent announcement about its

8 decision to investigate the patterns and practices existing within the COUNTY Jails,

9 SHERIFF BIANCO expressed the following indifference towards pretrial detainees

10 dying at alarming rates within his COUNTY Jails: "Of course I'm not happy, this is

11 going to waste our time.  Every single on of these inmate deaths was out of anyone's

12 control.  The fact of the matter is that they just happened to be in our custody." [24]

13    96.    Interestingly, SHERIFF BIANCO has taken this hardline (and insulting)

14 position when asked about fentanyl overdoes in his jails.  Yet, upon information and

15 belief, SHERIFF BIANCO is currently being investigated by the Federal Bureau of

16 Investigation ("FBI") for his interference with a murder investigation arising from

17 two fentanyl overdoses in the City of Riverside which occurred on February 21, 2022

18 before many of the fentanyl overdoses in COUNTY Jails.

19 ///

20 ///

21

22    litigation." *Kearney v. Foley & Lardner*, LLP, 590 F.3d 638, 649 (9th Cir.2009); *see also Leon v.*

23 *IDX Systems Corp*., 464 F.3d 951, 959, (9th Cir. 2006) ("A party's destruction of evidence qualifies as willful spoliation if the party has 'some notice that the documents were potentially relevant to the

24 litigation before they were destroyed.'").

[23] *See* "California Jails Are Trying to Keep Fentanyl Out, But Inmates Are Still Dying. In Riverside

25 County, Fentanyl is Blamed in 38% of In-custody Deaths So Far This Year," (Mercury News, September 26, 2022), available at: https://www.mercurynews.com/2022/09/26/southern-california-

26 jails-trying-to-keep-fentanyl-out-but-inmates-are-still-dying/

[24] *See* "Kudos to Bonta for Investigating the Sheriff. Let's Hope He Moves Quickly" (The Desert

27 Sun, March 5, 2023), available at

https://www.desertsun.com/story/opinion/editorials/2023/03/05/kudos-to-bonta-for-investigating-

28 riverside-county-sheriffs-department/69967829007/

**COMPLAINT FOR DAMAGES**

97.     On February 21, 2022, 22-year-old Sierra Riane Rangel and 21-year-old Arrena Marie Mariotti died from fentanyl overdoses.[25]

98.     On February 24, 2022, murder charges were filed against Peter Luis Mera Garcia.[26]  Upon information and belief, Peter Luis Mera Garcia is the son of a senior level deputy at RIVERSIDE COUNTY SHERIFF'S DEPARTMENT. Notably, the criminal case received wide public attention as this was the first time in the COUNTY OF RIVERSIDE that a person had been charged with murder due to a fentanyl death.

99.     Upon information and belief, the Riverside Police Department ("RPD") Special Weapons and Tactics ("SWAT") was charged with executing the search warrant of suspect Peter Luis Mera Garcia's home.

100.    Upon information and belief, suspect Peter Mera Garcia lived with his parents, including his father who was a senior level deputy employed by the RIVERSIDE COUNTY SHERIFF'S DEPARTMENT.

101.    Upon information and belief, Former RPD Sergeant, Frank Hoyos, was one of the SWAT Team members assigned to execute the search warrant.

102.    Upon information and belief, prior to the execution of the search warrant, RPD Chief of Police Larry Gonzalez was called by SHERIFF BIANCO for a favor.  SHERIFF BIANCO asked Chief Gonzalez to provide him with the name of the RCSD senior level deputy.

103.    Upon information and belief, RPD Chief Gonzalez proceeded to call RPD Sergeant Jimmy Simmons, who had no involvement with the investigation of this double homicide. RPD Chief Gonzalez informed Sgt. Simmons that he was calling him because SHERIFF BIANCO wanted to know the name of his deputy whose son had been booked.  RPD Chief Gonzalez tasked Sgt. Simmons with the

---

[25] *See* "Man Charged with Murder After 2 Riverside Woman Died from Fentanyl Overdoses," (The Press-Enterprise, April 28, 2022), available at https://www.pressenterprise.com/2022/04/28/man-charged-with-murder-after-2-riverside-women-died-from-fentanyl-overdoses/
[26] *Id.*

**COMPLAINT FOR DAMAGES**

assignment of finding out the name for SHERIFF BIANCO.

104.   Upon information and belief, RPD Sgt. Simmons secured the name of the RCSD senior deputy and relayed the name to RPD Chief Gonzalez.

105.   Upon information and belief RPD Chief Gonzalez then relayed the name to SHERIFF BIANCO.

106.   Upon information and belief, SHERIFF BIANCO then alerted his senior level deputy that the RPD SWAT Team would be executing the search warrant on a specific date and time and looking for very specific evidence in his home.

107.   Upon information and belief, the RCSD Senior Level Deputy convened with his son, suspect Peter Luis Mera Garcia, and together they ensured that when the RPD SWAT Team arrived at their home, they would find zero traces of a crime.

108.   Upon information and belief, when the RPD SWAT Team executed the search warrant during the early morning hours, the SWAT Team was greeted by the RCSD Senior Level Deputy who welcomed the SWAT Team into his home.  Indeed, no evidence of a crime was found.

109.   Clearly, SHERIFF BIANCO is personally responsible for the fentanyl crisis in RIVERSIDE COUNTY and has intentionally refused to make adequate measures within his jail to prevent individuals from dying from fentanyl.

## VII.

## PUNITIVE/EXEMPLARY DAMAGES ALLEGATIONS

### (Against individual Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM, and DOES 1-10)

110.   Each Defendants' conduct as alleged herein was done with reckless disregard for human life, oppression, and malice.

111.   Long before Kaushal Niroula's death, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM knew that there existed a great indifference to the safety and protection of the inmates who were in the government's custody within the COUNTY Jails.

112.   Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM were repeatedly put on notice of the great dangers which existed within the COUNTY Jails through the long history of in-custody deaths; the record-breaking amount of fentanyl overdoses throughout all COUNTY Jails; inmate-on-inmate violence; the federal class action *Quinton Gray, et al. v. County of Riverside,* case number 13-0444 VAP (OPx) (C.D. Cal.) targeting Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT's custody and medical staff's deliberate indifference towards the safety and protection of inmates; the warnings from the neutrally-selected experts regarding failures amounting to constitutional violations; a Consent Decree directing Defendant RIVERSIDE COUNTY SHERIFF's DEPARTMENT to implement a Remedial Plan to meet the minimum level of health care necessary to fulfill its obligations under the Eighth and Fourteenth Amendments; and through a Settlement Agreement which the COUNTY voluntarily entered into requiring that Defendant RIVERSIDE COUNTY SHERIFF'S DEPARTMENT  remedy all of the deficiencies in healthcare and disability accommodations alleged in the *Gray* class action complaint.

113.   Despite this long history of complete disregard to inmate safety and protection, Defendants SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER, and DAVID HOLM have deliberately failed to take even modest actions to prevent in-custody deaths at the COUNTY Jails which have for a very long time been infested with endemic, ongoing and unabated risks of injury or death to inmates.

114.   The Defendant officers, and each of them, acted with malice and oppression and with a conscious disregard for Plaintiffs' rights, making the individual defendants, including DOES 1-10, liable for punitive damages.

///

///

///

**COMPLAINT FOR DAMAGES**

# VIII.

## FIRST CAUSE OF ACTION

### Failure to Protect from Harm,

### Violation of the Fourteenth Amendment to the United States Constitution

### (Survival Action – 42 U.S.C. § 1983)

### By Plaintiff ESTATE OF KAUSHAL NIROULA As Against DOES 1 through 10

115.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

116.   By the actions and omissions described above, Defendants DOES 1 through 10, which included the RCSD custody personnel and the CHC medical personnel, acting under the color of state law in their individual capacities, deprived decedent Kaushal Niroula  of the right to have her safety and life protected while in the custody of Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT as secured by the Fourteenth Amendment, by subjecting her, or through their deliberate indifference, allowing others to subject her, to a deprivation of these rights to be protected, proximately leading to her being violently assaulted and strangled by inmate Ronald Sanchez.

117.   "[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989). Indeed, detainees in jails and prisons are "restricted in their ability to fend for themselves" and are, therefore, far more vulnerable than the general population. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996). It is long settled that "prison officials have a duty … to protect prisoners from violence at the hands of other prisoners" because corrections officers have "stripped [the inmates] of virtually every means of self-protection and foreclosed their access to outside aid." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)

(internal quotation marks omitted). The risk of inmate-on-inmate violence in the prison setting is well known.  Custodial staff, including deputies, lieutenants, sergeants, and correctional officers are not permitted to "bury their heads in the sand" and ignore these obvious risks to the inmate populations that they have an affirmative duty to protect. *See Walton v. Dawson*, 752 F.3d 1109, 1119 (8th Cir. 2014).

118.   Defendants DOES 1 through 10, which included the the RCSD custody personnel and the CHC medical personnel, knew or had reason to know that housing decedent Kaushal Niroula in the two-person cell with violent inmate Ronald Sanchez posed a substantial risk of serious harm to Kaushal Niroula, in view of the multitude of factors, including, but not limited to, the fact that Kaushal Niroula was a transgender female who was in a debilitated state due to her status as a HIV positive patient who was housed with inmate Ronald Sanchez – a convicted sex offender who had known violent and predatory proclivities.

119.   At the time decedent Kaushal Niroula was beaten and strangled to death by inmate Ronald Sanchez, Defendants DOES 1 through 10, which included the RCSD custody personnel and CHC medical personnel, were responsible for conducting proper cell checks, supervising inmates, and were responsible for protecting inmates from inmate-on-inmate violence by their cellmate.

120.   By the actions and omissions described above, Defendants DOES 1 through 10 violated 42 U.S.C. § 1983, depriving decedent Kaushal Niroula of the right to be protected from violence at the hands of other inmates while in custody, as well as the right to one's liberty in bodily integrity, as secured by the Fourteenth Amendment.

121.   The listed Defendants' failure to intervene, prevent, or stop the constitutional violations by others, when Defendants were in a position to so intervene when such violations were occurring, also renders such Defendant(s) liable for these violations.

///

**COMPLAINT FOR DAMAGES**

122.   Defendants subjected decedent Kaushal Niroula to their wrongful conduct, depriving Kaushal Niroula of the rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Kaushal Niroula others would be violated by their acts and/or omissions.

123.   As a proximate result of the foregoing wrongful acts and/or omissions, Kaushal Niroula sustained injuries and damages, all of which resulted in her death. Plaintiff ESTATE OF KAUSHAL NIROULA is therefore entitled to general and compensatory damages in an amount to be proven at trial.

124.   In committing the acts alleged above, Defendants DOES 1 through 10, acted maliciously and/or were guilty of a wanton and reckless disregard for the rights, safety, and emotional well-being of decedent Kaushal Niroula, and by reason thereof, Plaintiff ESTATE OF KAUSHAL NIROULA is entitled to punitive damages and penalties allowable under 42 U.S.C. § 1983, California Code of Civil Procedure §§ 377.20 *et seq*, and other state and federal law against these individual Defendants.

125.   Defendants COUNTY, RCSD and DOES 1 through 10 were on notice that their deficient policies, procedures, and practices alleged herein created substantial risk of serious harm to an inmate in decedent Kaushal Niroula's position.

126.   Each Defendant could have taken action to prevent unnecessary harm to decedent Kaushal Niroula but refused or failed to do so.

127.   By policy, procedure, and practice, Defendants COUNTY, RCSD and DOES 1 through 10 deliberately disregarded the hazards and risks posed to persons incarcerated at the CBDC, as alleged above.  Defendants failed to take any reasonable steps to mitigate the obvious and well-known risks of harm that was attendant to housing decedent Kaushal Niroula at CBDC.

128.   Defendants including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES  8 through 10 also knew that deputies routinely failed to conduct required welfare and safety checks at the COUNTY Jails, including CBDC, and failed to take sufficient actions to correct this

1   problem and ensure that necessary checks were performed.

2       129.   Defendant SHERIFF BIANCO failed to take corrective action,

3   discipline, or remove the command staff at the COUNTY Jails, including CBDC,

4   who, upon information and belief, directed the deputies to falsify safety check logs

5   and violate the COUNTY's safety check policies. Defendant SHERIFF BIANCO

6   ratified their actions, and the practices used under his watch.

7       130.   Defendants COUNTY, RCSD and DOES 1 through 10 were on notice

8   that their policies, procedures, and practices for monitoring inmates at the COUNTY

9   Jails, including CBDC, were inadequate and gave rise to a substantial risk of serious

10  harm.

11      131.   Defendants including SHERIFF BIANCO, EDWARD DELGADO,

12  JAMES KRACHMER, DAVID HOLM and DOES 8 through 10 failed to properly

13  train and supervise RCSD custody and medical staff regarding policies, procedures,

14  and practices necessary for the protection of inmates from risks and hazards existing

15  within the COUNTY Jails, including CBDC.

16      132.   Defendants including SHERIFF BIANCO, EDWARD DELGADO,

17  JAMES KRACHMER, DAVID HOLM and DOES 8 through 10's failure to correct

18  their policies, procedures, and practices despite notice of significant and dangerous

19  problems evidences deliberate indifference to the inmates in their care.

20      133.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES

21  KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES's

22  actions and inactions amounting to constitutional violations.

23      134.   Defendants DOES 1 through 10's failure to conduct the required safety

24  check of decedent Kaushal Niroula's housing unit on the date of her death evidences

25  deliberate indifference to the risk of harm to decedent Kaushal Niroula.

26      135.   Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES

27  KRACHMER, DAVID HOLM and DOES 8 through 10 ratified Defendants DOES's

28  failure to conduct safety checks and falsification of logs.

136.   As a direct and proximate result of Defendants' conduct, the civil right of Kaushal Niroula, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Kaushal Niroula experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

137.   Defendants subjected decedent Kaushal Niroula to their wrongful conduct, depriving decedent Kaushal Niroula of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Kaushal Niroula and others would be violated by their acts and/or omissions.

138.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, decedent Kaushal Niroula, through Plaintiffs herein, sustained injuries and damages.

139.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

140.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

**IX.**

**SECOND CAUSE OF ACTION**

**Failure to Provide Medical Care,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(Survival Action – 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF KAUSHAL NIROULA As Against DOES 1 through 10**

141.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

///

142.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, violated 42 U.S.C. § 1983, depriving decedent Kaushal Niroula, through Plaintiffs herein, of the following clearly established and well-settled constitutional rights protected by the Fourth and Fourteenth Amendments to the United States Constitution: Decedent's right to be free from deliberate indifference to Kaushal Niroula's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments.

143.   By the actions and omissions described above, Defendants DOES 1 through 10, as alleged herein, including but not limited to their failure to provide decedent Kaushal Niroula with appropriate emergency medical care, along with the acts and/or omissions of Defendants in failing to train, supervise, and/or promulgate appropriate policies and procedures to provide emergency medical care and life saving care to persons in their custody,  constituted deliberate indifference to Kaushal Niroula's serious medical needs, health, and safety.

144.   As a direct and proximate result of Defendants' conduct, the civil rights of Kaushal Niroula, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Kaushal Niroula experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

145.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

146.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Decedent, through Plaintiff herein, sustained injuries and damages.

147.   The conduct of Defendants entitles Plaintiff to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiff does not seek punitive damages against Defendants COUNTY.

148.   Plaintiff is also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## X.

### THIRD CAUSE OF ACTION

**Deprivation of the Right to Familial Relationship with Decedent,**

**Violation of the Fourteenth Amendment to the United States Constitution**

**(42 U.S.C. § 1983)**

**By Plaintiffs Radha Niroula and Krishna Niroula**

**As Against DOES 1 through 10**

149.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

150.   The aforementioned acts and/or omissions of Defendants DOES 1 through 10 in being deliberately indifferent to decedent Kaushal Niroula's protection, safety, and serious medical needs, violating decedent Kaushal Niroula's constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Kaushal Niroula deprived Plaintiffs RADHA NIROULA and KRISHNA NIROULA of their liberty interests in the parent-child relationship in violation of their substantive due process rights as defined by the Fourteenth Amendments of the Constitution.

151.   All of the acts of Defendants DOES 1 through 10 and the persons involved were done under color of state law.

152.   The acts and omissions of each Defendant deprived Plaintiffs RADHA NIROULA and KRISHNA NIROULA of rights, privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to the Fourteenth Amendment by, among other things, depriving Plaintiffs of their rights to a parent-child relationship with decedent Kaushal Niroula without due process of law by their deliberate indifference in denying Kaushal Niroula protection and safety

1   while incarcerated at CBDC and access to medical care while suffering a medical

2   emergency at CBDC.

3       153.   Defendants DOES 1 through 10 and the other involved agents and

4   employees acted pursuant to expressly adopted official policies or longstanding

5   practices or customs of the COUNTY and RCSD. These include policies and

6   longstanding practices or customs of failing to provide persons in pretrial custody

7   who are experiencing medical emergencies access to medical care as stated above and

8   incorporated herein.

9       154.   In addition, the training policies of the COUNTY and RCSD were not

10   adequate to train its deputies, agents and employees to handle the usual and recurring

11   situations with which they must deal with, including but not limited to encounters

12   with individuals in pretrial custody who are experiencing medical emergencies. These

13   Defendants and each of them knew that its failure to adequately train its COUNTY

14   Jails custody and medical staff, including other agents and employees, to interact with

15   individuals suffering from medical emergencies made it highly predictable that its

16   custody and medical staff would engage in conduct that would deprive persons such

17   as decedent Kaushal Niroula, and thus Plaintiffs RADHA NIROULA and KRISHNA

18   NIROULA, of their rights. These Defendants were thus deliberately indifferent to the

19   obvious consequences of their failure to train their deputies, agents and employees

20   adequately.

21       155.   Defendants COUNTY and RCSD's official policies and/or longstanding

22   practices or customs, including but not limited to its training policies, caused the

23   deprivation of the constitutional rights of Plaintiffs RADHA NIROULA, KRISHNA

24   NIROULA and decedent Kaushal Niroula by each individual Defendant's official

25   policies and/or longstanding practices or customs are so closely related to Kaushal

26   Niroula's injuries and death and thus the deprivation of the rights of Plaintiffs as to be

27   the moving force causing those injuries.

28   ///

**COMPLAINT FOR DAMAGES**

156.   Defendant SHERIFF BIANCO, a final policymaker for the COUNTY and RCSD, ratified the actions and omissions of Defendants DOES 1 through 10, all of whom were custody and medical staff at the COUNTY Jails, including CBDC, in that he had knowledge of and made a deliberate choice to approve their unlawful acts and omissions.

157.   As a direct and proximate result of Defendants' conduct, the civil rights of Kaushal Niroula, as protected by the Fourteenth Amendment of the United States Constitution were violated.  Further, decedent Kaushal Niroula experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

158.   Defendants subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent and others would be violated by their acts and/or omissions.

159.   As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiffs sustained injuries and damages.

160.   The conduct of Defendants entitles Plaintiffs to punitive damages and penalties allowable under 42 U.S.C. § 1983 and as provided by law. Plaintiffs do not seek punitive damages against Defendants COUNTY.

161.   Plaintiffs are also entitled to reasonable costs and attorneys' fees under 42 U.S.C. § 1988, and other applicable United States and California codes and laws.

## XI.

## FOURTH CAUSE OF ACTION

**Municipal Policies, Customs, Practices Causing Constitutional Violations**

**(*Monell* - 42 U.S.C. § 1983)**

**By Plaintiff ESTATE OF KAUSHAL NIROULA As Against Defendants COUNTY OF RIVERSIDE and RIVERSIDE COUNTY SHERIFF'S DEPARTMENT**

162.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

163.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other employees or officers employed by or acting on behalf of the Defendants COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendant COUNTY and RCSD:

a.    Selecting, retaining and assigning deputies to their jails who exhibit deliberate indifference and reckless disregard for the safety, security and constitutional and statutory rights of detainees, arrestees and inmates who exhibit vulnerabilities  due to their sexual orientation, gender identity, medical/mental health conditions, and disabilities;

b.    Subjecting persons in their jails to violence perpetrated by other detainees, arrestees or inmates;

c.    Failing to take adequate security measures to protect detainees, arrestees and inmates from unnecessary harm, including but not limited to, the following:

i.    separation of detainees and arrestees from potentially violent or dangerous inmates;

ii.    use of security cameras to monitor violence within jail cells;

iii.    training deputies to monitor detainees and inmates and immediately respond to acts of violence or threats of violence;

d.    Failing to properly classify, house, and monitor vulnerable detainees, arrestees and inmates;

e.    Failing to properly classify, house, and monitor violent detainees, arrestees and inmates;

f.    To allow and encourage deputies doing regular cell checks on inmates,

including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the COUNTY OF RIVERSIDE and RCSD's written policies and state law;

g.  Ratifying wrongful conduct by RCSD custody personnel and CHC medical personnel which result in serious injuries and death to inmates in RCSD custody, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

h.  Failing to discipline, investigate and take corrective actions against RCSD custody personnel and CHC medical personnel, including, but not limited to, showing grave deliberate indifference to the protection and safety of homosexual, transgender, and vulnerable inmates;

i.  Employing and retraining RCSD custodial and medical/mental health staff who knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating inmates and being deliberately indifference to the rights of inmates;

j.  To deny pretrial detainees and other inmates access to timely, appropriate, competent, and necessary care for serious medical needs, requiring such inmates in crisis to remain untreated in jail instead of providing for their emergency medical needs;

k.  To allow and encourage deputies doing regular cell checks on inmates, including in safety cells, to fail to document their actual observations of the inmate's condition and status, in violation of the County of Riverside's written policies and state law;

l.  To allow and encourage inadequate and incompetent medical care for jail inmates and arrestees;

m.  To hire, retain and contract for obviously inadequate medical care for jail inmates and arrestees, including creating financial incentives for

custodial and medical personnel not to send inmates with emergency medical needs to a hospital;

n. To allow, encourage, and require medical staff, including licensed vocational nurses and registered nurses, to work outside their legal scope of practice and without appropriate supervision;

o. To fail to train custody staff that medical staff, including licensed vocational nurses, are not competent to assess or decide inmates' medical conditions, medical needs, or whether the inmate should be permitted to remain in the jail versus being sent to a hospital;

p. To allow, encourage, and require unlicensed, incompetent, inadequately trained and/or inadequately supervised staff to assess inmates' medical condition, needs, and treatment, including to decide whether or not to provide inmates with necessary emergency care and hospitalization;

q. To fail to institute, require, and enforce proper and adequate training, supervision, policies, and procedures concerning handling persons in medical crisis;

r. To cover up violations of constitutional rights by any or all of the following:

    i. By failing to properly investigate and/or evaluate incidents of violations of rights, including by unconstitutional medical care at the jail;

    ii. By ignoring and/or failing to properly and adequately investigate and/or investigate and discipline unconstitutional or unlawful conduct by custodial and medical personnel;

    iii. By turning a blind eye to custodial and medical personnel who direct, aid, and/or assist with the distribution of hazards, including illicit drugs, into the Riverside County jails; and

**COMPLAINT FOR DAMAGES**

iv.    By allowing, tolerating, and/or encouraging custodial and medical personnel to: fail to file complete and accurate reports; file false reports; make false statements; and/or obstruct or interfere with investigations of unconstitutional or unlawful conduct by withholding and/or concealing material information;

s.    To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers, RCSD personnel, custodial personnel and medical personnel at the jail whereby an officer or member of the RCSD, or medical staff does not provide adverse information against a fellow officer, or member of the RCSD or the medical staff;

t.    To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (j) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face of an obvious need for such policies, procedures, and training programs.

164.    The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, as well as other officers employed by or acting on behalf of the COUNTY and RCSD, on information and belief, were pursuant to the following customs, policies, practices, and/or procedures of the COUNTY and the RCSD, stated in the alternative, which were directed, encouraged, allowed, and/or ratified by policymaking officers for the COUNTY and RCSD, including SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER and DAVID HOLM:

a.    To fail to properly and adequately hire, train, supervise, and monitor custodial and medical personnel at the jails;

b.    To fail to use appropriate and generally accepted law enforcement procedures for handling persons in medical crisis;

c.    To fail to institute, require, and enforce proper and adequate training,

supervision, policies, and procedures concerning handling persons in medical crisis;

d.   To cover up violations of constitutional rights by any or all of the following:

    i.   By failing to properly investigate and/or evaluate complaints or incidents of handling of persons in medical crisis;

    ii.   By ignoring and/or failing to properly and adequately investigate and/or discipline unconstitutional or unlawful law enforcement activity; and

    iii.   By allowing, tolerating, and/or encouraging law enforcement officers to: fail to file complete and accurate reports; file false reports; make false statements; intimidate, bias and/or "coach" witnesses to give false information and/or to attempt to bolster officers' stories; and/or obstruct or interfere with investigations of unconstitutional or unlawful law enforcement conduct by withholding and/or concealing material information;

e.   To allow, tolerate, and/or encourage a "code of silence" among law enforcement officers whereby an officer does not provide adverse information against a fellow law enforcement officer;

f.   To allow, tolerate, and/or encourage a "code of silence" among custodial and medical personnel at the COUNTY jails whereby custodial and medical personnel does not provide adverse information against a fellow staffer;

g.   To fail to have and enforce necessary, appropriate, and lawful policies, procedures, and training programs to prevent or correct the unconstitutional conduct, customs, and procedures described in subparagraphs (a) through (g) above, with deliberate indifference to the rights and safety of pretrial detainees, such as Decedent, and in the face

of an obvious need for such policies, procedures, and training programs.

165.   Defendants COUNTY and RCSD, through their employees and agents, and through their policy-making supervisors, SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, with deliberate indifference to the constitutional rights of decedent Kaushal Niroula, Plaintiffs and others in similar positions, as described above, and therefore, those rights thereby violated.

166.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other RCSD custody and medical staff,  as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD,  including Defendants SHERIFF BIANCO, EDWARD DELGADO, JAMES KRACHMER, DAVID HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to the authorized policymakers within the COUNTY and RCSD, and that such policymakers have direct knowledge of the fact that the death of Kaushal Niroula was the result of deliberate indifference to her rights to be protected and safe while in the custody of the COUNTY/RCSD, and her rights to have access to medical care when suffering a medical emergency.  Notwithstanding this knowledge, the authorized policymakers within the COUNTY and RCSD have approved of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Kaushal Niroula. By so doing, the authorized policymakers within the COUNTY and RCSD have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, EDWARD DELGADO,

1  JAMES KRACHMER, DAVID HOLM and DOES 8 through 10, and other policy-

2  making officers for the COUNTY and RCSD were and are aware of a pattern of

3  misconduct and injury caused by COUNTY Jails custody and medical staff similar to

4  the conduct of Defendants described herein, but failed to discipline culpable custody

5  and medical staff and failed to institute new procedures and policy within the

6  COUNTY and RCSD.

7       167.   The aforementioned customs, policies, practices, and procedures; the

8  failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate,

9  investigate, and discipline; and the unconstitutional orders, approvals, ratification,

10  and toleration of wrongful conduct of Defendants COUNTY and RCSD were a

11  moving force and/or a proximate cause of the deprivations of decedent Kaushal

12  Niroula's clearly established and well-settled constitutional rights in violation of 42

13  U.S.C. § 1983. Defendants subjected decedent Kaushal Niroula to their wrongful

14  conduct, depriving decedent Kaushal Niroula of rights described herein, knowingly,

15  maliciously, and with conscious and reckless disregard for whether the rights and

16  safety of decedent Kaushal Niroula, Plaintiffs and others would be violated by their

17  acts and/or omissions.

18       168.   On information and belief, the COUNTY Jails, including CBDC, were

19  overcrowded at the time decedent Kaushal Niroula was brutally beaten,  which

20  contributed to the pressure to place Kaushal Niroula in a cell where inmate Ronald

21  Sanchez could prey on her. Plaintiffs allege, on information and belief, that

22  conditions resulting from overcrowding at the COUNTY Jails caused or contributed

23  to the death of Kaushal Niroula.  Overcrowding in the COUNTY Jails has led to the

24  negligent, improper, and unconstitutional housing of inmates in RCSD custody,

25  including CBDC, and including Kaushal Niroula.

26       169.   On information and belief, the COUNTY Jails, including CBDC, were

27  understaffed at the time decedent Kaushal Niroula was brutally beaten, which

28  contributed to RCSD custody personnel not properly and timely conducting proper

**COMPLAINT FOR DAMAGES**

welfare checks, not properly supervising and monitoring inmates, and not properly monitoring surveillance cameras installed to keep watch of the overcrowded CBDC facility. Plaintiffs allege, on information and belief, that conditions resulting from this understaffing at the COUNTY Jails caused or contributed to the death of Kaushal Niroula.  Understaffing in the COUNTY Jails has led to the negligent, improper, and unconstitutional supervision of inmates in RCSD custody, including CBDC, and including Kaushal Niroula.

170.   Defendants DOES 1 through 10 failed to ensure that decedent Kaushal Niroula was properly and appropriately assessed and classified prior to placing her in a cell with Inmate Sanchez.

171.   The Defendants' actions and omissions and the classification and housing of decedent Kaushal Niroula was contrary to generally accepted custodial classification and housing practices, causing the brutal assault and strangulation of Kaushal Niroula resulting in her death.

172.   Defendants DOES 1 through 10, each individually knew or reasonably should have known that his subordinates were violating clearly established law and/or RCSD policy and/or were acting negligently pertaining to the classification and housing of inmates by, inter alia, being deliberately indifferent to the record of past conduct of inmates before celling them with other inmates, being deliberately indifferent to the mental health status of inmates before celling them with other inmates, being deliberately indifferent to the fact that an inmate has been designated a single-cell inmate, and/or being deliberately indifferent to threats and statements made by inmates before celling them with other inmates, being deliberately indifferent to inmates' status as dropouts from prison gangs, being deliberately indifferent to inmates' status as transgender when housing them with a convicted sex offender, and knew, should have known, or had reason to know that their conduct would deprive decedent Kaushal Niroula of her constitutional rights to, inter alia, life and liberty, and each defendant failed to act to prevent his subordinate from engaging

1   in such conduct.

2       173.   As a direct and proximate result of the unconstitutional actions,

3   omissions, customs, policies, practices, and procedures of Defendants COUNTY and

4   RCSD, as described above, decedent Kaushal Niroula suffered serious injuries and

5   death, Plaintiff is entitled to damages, penalties, costs, and attorneys' fees against

6   Defendants COUNTY and RCSD.

7                                    **XII.**

8                       **FOURTH CAUSE OF ACTION**

9            **Supervisory Liability Causing Constitutional Violations,**

10   **(Failure to Properly Train, Supervise and Discipline, 42 U.S.C. § 1983)**

11      **By Plaintiff ESTATE OF KAUSHAL NIROULA As Against Defendants**

12      **SHERIFF CHAD BIANCO, EDWARD DELGADO, JAMES KRACHMER,**

13                     **DAVID HOLM and DOES 7 through 10**

14      174.   Plaintiffs reallege and incorporate herein by reference each of the

15   preceding paragraphs of this complaint, and any subsequent paragraphs.

16      175.   At all material times, SHERIFF BIANCO, DELGADO, KRACHMER,

17   HOLM and DOES 8 through 10 had the duty and responsibility to constitutionally

18   hire, train, instruct, monitor, supervise, evaluate, investigate, staff, and discipline the

19   other Defendants employed by their respective agencies in this matter, as well as all

20   employees and agents of the COUNTY and RCSD.

21      176.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM

22   and DOES 8 through 10 failed to properly hire, train, instruct, monitor, supervise,

23   evaluate, investigate, and discipline the respective employees of their agencies,

24   including Defendants DOES 1 through 10, and other COUNTY and RCSD personnel,

25   with deliberate indifference to Plaintiffs', decedent Kaushal Niroula's, and others'

26   constitutional rights, which were thereby violated as described above.

27      177.   As supervisors, Defendants SHERIFF BIANCO, DELGADO,

28   KRACHMER, HOLM and DOES 8 through 10 each permitted and failed to prevent

the unconstitutional acts of other Defendants and individuals under their supervision and control, and failed to properly supervise such individuals, with deliberate indifference to the rights to safety and protections while incarcerated at CBDC and the rights to the serious medical needs of decedent Kaushal Niroula. Each of these supervising Defendants either directed his or her subordinates in conduct that violated Decedent's rights, or set in motion a series of acts and omissions by his or her subordinates that the supervisor knew or reasonably should have known would deprive decedent Kaushal Niroula of rights, or knew his or her subordinates were engaging in acts likely to deprive decedent Kaushal Niroula of rights and failed to act to prevent his or her subordinate from engaging in such conduct, or disregarded the consequence of a known or obvious training deficiency that he or she must have known would cause subordinates to violate decedent Kaushal Niroula's rights, and in fact did cause the violation of decedent Kaushal Niroula's rights. (*See*, Ninth Circuit Model Civil Jury Instruction 9.4). Furthermore, each of these supervising Defendants is liable in their failures to intervene in their subordinates' apparent violations of decedent Kaushal Niroula' rights.

178.   On and before September 6, 2022, and prior to the violent beating of decedent Kaushal Niroula, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, and each of them, were aware that Defendants DOES 1 through 5 had engaged in a custom and practice of being deliberately indifferent to the classification and housing of inmates by, inter alia, being deliberately indifferent to the record of past conduct of inmates before celling them with other inmates, being deliberately indifferent to the mental health status of inmates before celling them with other inmates, being deliberately indifferent to the fact that an inmate has been designated a single-cell inmate, being deliberately indifferent to threats and statements made by inmates before celling them with other inmates, being deliberately indifferent to inmates' deteriorating mental and physical states rendering them vulnerable and as pray to violent inmates, being deliberately

1   indifferent to inmate's status as a transgender female when housing them with male

2   inmates who are convicted sex offender with known violent and predatory

3   proclivities rendering them vulnerable and as pray to violent inmates, and knew,

4   should have known, or had reason to know that their conduct would deprive the

5   Plaintiffs of their constitutional rights to, inter alia, life and liberty, and each

6   Defendant failed to act to prevent his subordinate from engaging in such conduct.

7       179.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, and

8   HOLM are being sued in their individual and personal capacities.  Defendant

9   SHERIFF BIANCO knew or reasonably could have known, of his subordinates'

10   ongoing constitutional violations, deliberate indifference to the safety and protection

11   of inmates in the COUNTY Jails and failure to investigate incidents involving

12   inmate-on-inmate violence in the COUNTY Jails, including CBDC.  Defendant

13   SHERIFF BIANCO failed to act to prevent these acts and he acquiesced, condoned or

14   ratified a custom, practice or policy of ongoing misconduct by his subordinates,

15   including Defendants DOES 1 through 10.  Defendant SHERIFF BIANCO is sued in

16   his individual capacity for his own culpable action or inaction in the training,

17   supervisor, or control of his subordinates.  Defendant SHERIFF BIANCO is also

18   sued for his acquiescence in the constitutional deprivations as alleged herein and/or

19   conduct that showed a reckless or callous indifference to the rights of inmates to be

20   protected and safe while in the custody of the COUNTY Jails by implementation of

21   policies, rules or directives. Defendant SHERIFF BIANCO's actions and/or inactions

22   set in motion a series of acts by others, which he knew or reasonably should have

23   known, would cause others to inflict the constitutional violations alleged herein

24       180.   Plaintiffs are informed and believe and thereon allege that prior to the

25   incident alleged herein, on or before September 6, 2022, and subsequent hereto,

26   Defendant SHERIFF BIANCO knew or reasonably should have known, that RCSD

27   custodial staff, including correctional officers, deputies, lieutenants, sergeants,

28   detectives, including Defendants DOES 1 through 10, in the course and scope of their

**COMPLAINT FOR DAMAGES**

employment under color of law, were deliberately indifferent to the safety and protection of inmates in RCSD custody, failure to investigate to the prevalence of inmate-on-inmate violence existing within the COUNTY Jails, including at CBDC and violation of constitutional rights, which wrongful conduct resulted in vulnerable inmates being violently attacked while in custody.

181.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, and HOLM and DOES 6 through 8, and each of them, acting with deliberate indifference to the rights and liberties of the public in general, and of the present Plaintiffs, and of persons in decedent Kaushal Niroula's class, situation and comparable position in particular (transgender female inmate with a debilitated physical state due to being HIV positive), knowingly maintained, enforced and applied customs and practices of:

  a.  Ratifying wrongful conduct by custodial and medical staff which result in serious injuries and death to inmates in RCSD custody, civil litigation judgments and settlements by failing to implement corrective action to prevent repetition of the wrongful conduct;

  b.  Failing to discipline, investigate and take corrective actions against custodial and medical staff for misconduct, including, but not limited to, showing grave deliberate indifference to the protection and safety of mentally ill, vulnerable inmates;

  c.  Employing and retraining custodial and medical staff, including DOES 1 through 5, who said Defendants knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating inmates and being deliberately indifference to the rights of inmates; and

  d.  Inadequately supervising, training, controlling, assigning, and disciplining custodial and medical staff, including DOES 1 through 5, who said Defendants knew or in the exercise of reasonable care should have known had the aforementioned propensities and character traits.

**COMPLAINT FOR DAMAGES**

182.   The unconstitutional customs, policies, practices, and/or procedures of Defendants COUNTY and RCSD, as stated herein, were directed, encouraged, allowed, and/or ratified by policymaking officers for Defendants COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10, respectively, with deliberate indifference to Plaintiff's, decedent Kaushal Niroula's, and others' constitutional rights, which were thereby violated as described above.

183.   The unconstitutional actions and/or omissions of Defendants DOES 1 through 10, and other COUNTY and RCSD personnel, as described above, were approved, tolerated, and/or ratified by policymaking officers for the COUNTY and RCSD, including Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10. Plaintiff is informed and believes and thereon alleges that the details of this incident have been revealed to Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 and that such Defendant-policymakers have direct knowledge of the fact that the death of decedent Kaushal Niroula was not justified or necessary, but represented deliberate indifference to her rights to be protected and safe while in the COUNTY's custody and her rights to her serious medical needs and protection, as set forth above. Notwithstanding this knowledge, on information and belief, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have approved and ratified of the conduct and decisions of Defendants DOES 1 through 10 in this matter, and have made a deliberate choice to endorse such conduct and decisions, and the basis for them, that resulted in the death of Kaushal Niroula. By so doing, Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 have shown affirmative agreement with the individual Defendants' actions and have ratified the unconstitutional acts of the individual Defendants. Furthermore, Plaintiffs are informed and believe, and thereupon allege, that Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES

8 through 10 and other policymaking officers for the COUNTY and RCSD were and are aware of a pattern of misconduct and injury, and a code of silence, caused by COUNTY and RCSD custody and medical staff personnel similar to the conduct of Defendants described herein, but failed to discipline culpable law enforcement officers and employees and failed to institute new procedures and policy within the COUNTY and RCSD.

184.   The aforementioned customs, policies, practices, and procedures; the failures to properly and adequately hire, train, instruct, monitor, supervise, evaluate, investigate, and discipline; and the unconstitutional orders, approvals, ratification, and toleration of wrongful conduct of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 were a moving force and/or a proximate cause of the deprivations of decedent Kaushal Niroula's clearly established and well-settled constitutional rights in violation of 42 U.S.C. § 1983, as more fully set forth above.

185.   Defendants subjected decedent Kaushal Niroula to their wrongful conduct, depriving decedent Kaushal Niroula of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of decedent Kaushal Niroula and others would be violated by their acts and/or omissions.

186.   As a direct and proximate result of the unconstitutional actions, omissions, customs, policies, practices, and procedures of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 as described above, Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorneys' fees.

///
///
///
///

# XIII.

## SIXTH CAUSE OF ACTION

### Negligence – Wrongful Death

**Plaintiffs Radha Niroula and Krishna Niroula As Against All Defendants**

187.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

188.   At all times, Defendants DOES 1 through 10 owed Plaintiffs and decedent Kaushal Niroula the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

189.   At all times, these Defendants owed Plaintiffs and decedent Kaushal Niroula the duty to act with reasonable care.

190.   These general duties of reasonable care and due care owed to Plaintiffs and decedent Kaushal Niroula by these Defendants include but are not limited to the following specific obligations:

    a.  To provide safe and appropriate RCSD custody at CBDC for decedent Kaushal Niroula, including reasonable classification, monitoring, and housing, and ensuring proper cell checks, supervision, and monitoring;

    b.  To obey federal law, Supreme Court and Ninth Circuit precedent, and Court Orders for the care and safety of inmates, such as decedent Kaushal Niroula;

    c.  To use generally accepted prison, custodial, institutional, law enforcement, and other inmate-safety-ensuring procedures that are reasonable and appropriate for decedent Kaushal Niroula's status and history as a RCSD inmate with special needs due to her status a transgender female inmate who is HIV positive;

    d.  To summon, or transport Decedent to, necessary and appropriate emergency medical care;

    e.  To refrain from unreasonably creating danger or increasing Decedent's

1    risk of harm;

2    f.   To use generally accepted law enforcement procedures and tactics that

3         are reasonable and appropriate for Decedent's status as a person in

4         medical crisis with serious medical needs;

5    g.   To conduct state mandated safety and welfare checks of inmates in the

6         custody of the COUNTY Jails;

7    h.   To refrain from abusing their authority granted them by law; and

8    i.   To refrain from violating Plaintiffs' and Decedent's rights as guaranteed

9         by the United States and California Constitutions, as set forth above, and

10        as otherwise protected by law.

11   191.   By the acts and omissions set forth more fully in the paragraphs above,

12   Defendants acted negligently and breached their duty of due care owed to decedent

13   Kaushal Niroula, which foreseeably resulted in the death of Kaushal Niroula.

14   192.   Defendants, through their acts and omissions, breached the

15   aforementioned duties owed to decedent Kaushal Niroula, and such breach

16   proximately led to the brutal and violent beating and killing of Kaushal Niroula by

17   inmate Ronald Sanchez. Among other reasons, inmate Ronald Sanchez clearly was

18   afforded ample opportunity by Defendants 1 through 5 to commit the violent attack

19   because, as is set forth infra, decedent Kaushal Niroula was found unresponsive in the

20   cell he shared with inmate Ronald Sanchez after a substantial amount of time had

21   lapsed since the violent attack and despite obvious signs that Kausha Niroula was

22   being beaten, assaulted and strangled in her cell for an appreciable amount of time as

23   supported by the disturbing surveillance video footage.

24   193.   On information and belief, Defendants DOES 1 through 10, all of which

25   were custodial and mental health staff at the COUNTY Jails, and specifically the

26   CBDC,  acted with deliberate indifference and/or negligence by failing to properly

27   supervise inmate Ronald Sanchez and decedent Kaushal Niroula,  failing to prevent

28   inmate Ronald Sanchez from assaulting decedent Kaushal Nirula and failing to

conduct proper and timely cell checks.

194.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10 had a duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein.

195.   Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM and DOES 8 through 10  breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training, and retention under the laws of the State of California.

196.   As a direct and proximate result of the failure of Defendants SHERIFF BIANCO, DELGADO, KRACHMER, HOLM  and DOES 8 through 10  to carry out their duty to hire, supervise, train, and retain employees and/or agents so that employees and/or agents refrained from the conduct and/or omissions alleged herein, Plaintiffs suffered injuries and damages as alleged herein.

197.   Defendants DOES 1 through 10, through their acts and omissions, breached each and every one of the aforementioned duties owed to Plaintiffs and decedent Kaushal Niroula.

198.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

199.   As a direct and proximate result of these Defendants' negligence, Plaintiffs and decedent Kaushal Niroula sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief, including punitive damages against such individual Defendants.

///

///

///

///

# XIV.

## SEVENTH CAUSE OF ACTION

### Negligence – Medical Malpractice

**Plaintiff ESTATE OF KAUSHAL NIROULA As Against All Defendants**

200.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

201.   Decedent Kaushal Niroula was under the care and treatment of Defendants DOES 1 through 10, all of whom were COUNTY medical staff assigned to the COUNTY Jails, including CBDC, who were required to examine, treat, monitor, prescribe for and care for her and to provide her with medical attention when Kaushal Niroula suffered a medical emergency. These Defendants, acting within the scope and course of their employment with Defendants COUNTY and RCSD, negligently, carelessly and unskillfully cared for, attended, handled, controlled; failed to monitor and follow-up; abandoned; failed to classify, failed to appropriately diagnose and/or refer decedent Kaushal Niroula to specialist medical care providers; negligently failed to provide physician care; carelessly failed to detect, monitor, and follow-up with her condition; and negligently, carelessly and unskillfully failed to possess and exercise that degree of skill and knowledge ordinarily possessed and exercised by others in the same profession and in the same locality as Defendants for the benefit of their patient and dependent pre-trial detainee Kaushal Niroula.

202.   Defendant supervisors and each of them failed to supervise, train and monitor their subordinates, to maintain proper supervision, classification and staffing, to timely provide decedent Kaushal Niroula emergency medical care, failed to provide adequate and competent staffing, and to ensure the care and treatment ordered for decedent Kaushal Niroula was provided.

203.   As a direct and legal result of the aforesaid negligence and carelessness of Defendants' actions and omissions, Plaintiffs sustained injuries and damages, and

1 | against these Defendants, and each of them, are entitled to compensatory damages

2 | and as applicable to this claim for Medical Negligence, to be proven at time of trial.

3 |     204.   Defendants COUNTY and RCSD are vicariously liable for the violations

4 | of state law and conduct of their officers, deputies, employees, and agents, including

5 | individual named defendants, under California Government Code § 815.2.

## XV.

## <u>EIGHTH CAUSE OF ACTION</u>

### Violation of California Government Code § 845.6

### Plaintiff ESTATE OF KAUSHAL NIROULA As Against All Defendants

205.   Plaintiff realleges and incorporates herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

206.   Defendants DOES 1 through 10 was in need of immediate medical care and treatment, and each failed to take reasonable action to summon immediate medical care and treatment. Each such individual defendant, employed by and acting within the course and scope of his/her employment with Defendants COUNTY and RCSD, knowing and/or having reason to know of decedent Kaushal Niroula's need for immediate medical care and treatment, failed to take reasonable action to summon such care and treatment in violation of California Government Code § 845.6.

207.   Defendants COUNTY and RCSD are vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

208.   As a direct and proximate result of the aforementioned acts of these Defendants, decedent Kaushal Niroula was injured as set forth above, and their losses entitle Plaintiff to all damages allowable under California law. Plaintiff sustained serious and permanent injuries and is entitled to damages, penalties, costs, and attorney fees under California law, including punitive damages against these individual Defendants.

///

**COMPLAINT FOR DAMAGES**

# XVI.

## NINTH CAUSE OF ACTION

### Violation of California Civil Code §52.1 (Tom Bane Act)

### Plaintiff ESTATE OF KAUSHAL NIROULA As Against All Defendants

209. Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

210. Plaintiff brings the claims in this cause of action as a survival claim permissible under California law, including Cal. Code of Civ. Proc. § 377.20 *et. seq.*

211. By their acts, omissions, customs, and policies, Defendants, each acting in concert/conspiracy, as described above, while decedent Kaushal Niroula was in custody, and by threat, intimidation, and/or coercion, interfered with, attempted to interfere with, and violated Kaushal Niroula's rights under California Civil Code § 52.1 and under the United States Constitution and California Constitution as follows:

    a. The right to be free from objectively unreasonable treatment and deliberate indifference to Decedent's serious medical needs while in custody as a pretrial detainee as secured by the Fourth and/or Fourteenth Amendments to the United States Constitution and by California Constitution, Article 1, §§ 7 and 13;

    b. The right for the familial association to be free from government interference as secured by the Fourteenth Amendments to the United States Constitution;

    c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, § 1; and

    d. The right to emergency medical care as required by California Government Code §845.6.

212. Defendants' violations of decedent Kaushal Niroula's due process rights with deliberate indifference, in and of themselves constitute violations of the Bane

Act.1[27] Alternatively, separate from, and above and beyond, Defendants' attempted interference, interference with, and violation of Kaushal Niroula's rights as described above, Defendants violated Kaushal Niroula's rights by the following conduct constituting threat, intimidation, or coercion:

    a. Intentionally and/or with deliberate indifference, failing to protect decedent Kaushal Niroula from violence, when it was also obvious that in doing so, Kaushal Niroula's safety could be severely jeopardize as a violent attack which would kill her was foreseeable given her status as a transgender female and being in a debilitated state due to her HIV positive status, and Plaintiff's rights would also be violated;

    b. Intentionally and/or with deliberate indifference, failing to provide appropriate housing, thereby subjecting decedent Kaushal Niroula to needless and severe suffering, and exposing Kaushal Niroula to violence, when it was also obvious that in doing so, Kaushal Niroula would be victimized/assaulted/killed, and Plaintiffs' rights would also be violated;

    c. Failing to protect decedent Kaushal Niroula from physical harm or from being set up or violently attacked, despite the fact that Kaushal Niroula had expressed to numerous individuals fear for her own safety given her vulnerable physical state and status as a transgender female who was forced to be housed with a convicted sex offender;

    d. With deliberate indifference to Decedent's serious medical needs, suffering, and risk of grave harm including death, depriving Decedent of necessary, life-saving care for her medical needs;

    e. With deliberate indifference to violent and predatory inmates that posed

---

[27] *See Atayde v. Napa State Hosp.*, No. 1:16-cv-00398-DAD-SAB, 2016 U.S. Dist. LEXIS 126639, at *23 (E.D. Cal. Sept. 16, 2016) (citing *M.H. v. Cty. of Alameda*, 90 F. Supp. 3d 889, 899 (N.D. Cal. 2013); *see also, Cornell v. City and County of San Francisco*, Nos. A141016, A142147, 2017 Cal. App. LEXIS 1011 at *58, f.n. 32 (Cal. Ct. App. Nov. 16, 2017) (approving M.H., supra.); *Reese v. County of Sacramento*, 888 F.3d 1030, 1043-44 (9th Cir. 2018) (following *Cornell*); *Rodriguez v. County of L.A.*, 891 F.3d 776, 799, 802 (9th Cir. 2018) (following *Cornell*).

**COMPLAINT FOR DAMAGES**

a risk to pretrial detainees, such as Decedent;

f. Subjecting Decedent to ongoing violations of her rights to prompt care for her serious medical needs over days, causing immense and needless suffering, intimidation, coercion, and threats to her life and well-being;

g. Deliberately contracting for and causing the provision of inadequate and incompetent medical health care to Riverside County jail detainees and inmates;

h. Requiring medical staff to work outside their scope of practice, and conduct assessments, triage, and make medical and housing decisions for patients, including Decedent, they are not competent to make; and

i. Instituting and maintaining the unconstitutional customs, policies, and practices described herein, when it was obvious that in doing so, individuals such as Decedent would be subjected to violence, threat, intimidation, coercion, and ongoing violations of rights as Decedent was here.

213. The threat, intimidation, and coercion described herein were not necessary or inherent to Defendants' violation of decedent Kaushal Niroula's rights, or to any legitimate and lawful jail or law enforcement activity.

214. Further, all of Defendants' violations of duties and rights, and coercive conduct, described herein were volitional acts; none was accidental or merely negligent.

215. Further, each Defendant violated decedent Kaushal Niroula's rights reckless disregard and with the specific intent and purpose to deprive her of her enjoyment of those rights and of the interests protected by those rights.

216. Defendant COUNTY is vicariously liable for the violations of state law and conduct of their officers, deputies, employees, and agents, including individual named defendants, under California Government Code § 815.2.

///

**COMPLAINT FOR DAMAGES**

217.    As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of decedent Kaushal Niroula's rights under the United States and California Constitutions, Plaintiff sustained injuries and damages, and against each and every Defendant is entitled to relief, including punitive damages against all individual Defendants, and all damages allowed by California Civil Code §§ 52 and 52.1 and California law, not limited to costs attorneys' fees, and civil penalties.

## XVII.

## TENTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### Plaintiffs Radha Niroula and Krishna Niroula As Against Defendant SHERIFF CHAD BIANCO

218.    Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

219.    On September 16, 2022, The Press-Enterprise posted the article "Sheriff Explains How 13 Riverside County Inmates Died This Year" on Facebook with the following caption: "Less than an hour after the family of a man who died in jail publicly complained about a lack of information on his death and that of 12 other Riverside County inmates this year, Sheriff Chad Bianco explained how they died."

220.    Within fourteen hours of article being posted on Facebook, SHERIFF BIANCO went on to publicly shame and harass the families, including Plaintiffs, and their deceased loved ones, posing the following offensive rhetorical questions to the Facebook community and calling the Matus family attorney, Christian Contreras, a "bad" person:

    a.   Did they demand that their family members not commit suicide or consume drugs while they were in custody?

    b.   Did they ever demand that their family members not commit crimes in the first place?

    c.   Did their parents ever demand they take responsibility for their own

1      actions?

2          d.  Do they ever think they played a huge part in the situation they find

3              themselves in, other than the personal actions of their deceased loved

4              one?

5      221.   Defendant SHERIFF BIANCO posted these comments on the public

6   form with the intent to harass and cause Plaintiffs Radha Niroula and Krishna Niroula

7   mental anguish and turmoil.   He knew that given the public forum nature of the

8   Facebook post that the family of Kaushal Niroula, including the present Plaintiffs,

9   would read said harassing and offensive comments and that his actions would cause

10  them great mental/psychological pain and anguish.  Notwithstanding, SHERIFF

11  BIANCO deliberately engaged in this harassing and confrontational behavior.

12     222.   It was his intention to cause them great mental/psychological pain and

13  anguish, and he did so through these actions.

14     223.   Plaintiffs Radha Niroula and Krishna Niroula seek compensatory

15  damages incurred as a proximate result of Defendant SHERIFF BIANCO's deliberate

16  and intentional misconduct.  Plaintiffs have suffered great emotional harm and will

17  continue to suffer such harm in the future as a direct and proximate result of the

18  aforementioned acts or omissions by Defendant SHERIFF BIANCO.

19     224.   The acts or omissions of Defendant SHERIFF CHAD BIANCO, as

20  alleged above were willful, wanton, malicious, oppressive, and outrageous, and

21  justify the awarding of exemplary and punitive damages against him.

22     225.    Defendant COUNTY is vicariously liable for the violations of state law

23  and conduct of its officers, deputies, employees, and agents, including individual

24  named defendants, under California Government Code § 815.2.

25     226.   As a direct and proximate result of these Defendant SHERIFF

26  BIANCO's intentional conduct, Plaintiffs Radha Niroula and Krishna Niroula

27  sustained injuries and damages, and against each and every Defendant named in this

28  cause of action in their individual capacities are entitled to relief, including punitive

**COMPLAINT FOR DAMAGES**

damages against such individual Defendants.

## XVIII.

## ELEVENTH CAUSE OF ACTION

### Declaratory Relief

### (28 U.S.C § 2201)

### Plaintiffs As Against All Defendants

227.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

228.   There is an actual controversy between Plaintiffs and Defendants concerning their respective rights and duties in that Plaintiffs contend that the acts of Defendants, as described herein, are in violation of federal law, and Defendants contend in all aspects to the contrary.

229.   Plaintiffs are entitled to a legal declaration of their rights and Defendants' obligations under the applicable laws as alleged in this Complaint.

## XIX.

## TWELFTH CAUSE OF ACTION

### Battery

### Plaintiff Estate of Kaushal Niroula As Against Defendant Ronald Sanchez

230.   Plaintiffs reallege and incorporate herein by reference each of the preceding paragraphs of this complaint, and any subsequent paragraphs.

231.   On September 6, 2022, Defendant RONALD SANCHEZ, without cause or provocation, struck, hit, punched, kicked, strangled and otherwise forcibly contacted decedent Kaushal Niroula, causing her great injury which resulted in death, and constituting a battery under California law.

232.   As a direct and proximate result of Defendant SANCHEZ's battery, decedent Kaushal Niroula sustained injuries and damages which resulted in her death.

///

///

## XX.

## **REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully requests that the Court enter a judgment as follows:

A.   Wrongful death of Kaushal Niroula, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

B.   Loss of support and familial relationships, including loss of love, companionship, comfort, affection, society, services, solace, and moral support, pursuant to Cal. Code of Civ. Proc. § 377.60 et. seq.;

C.   Kaushal Niroula's coroner's fees, funeral and burial expenses, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq.;

D.   Violation of Kaushal Niroula's constitutional rights, pursuant to Cal. Code of Civ. Proc. § 377.20 et. seq. and federal civil rights law;

E.   Kaushal Niroula's loss of life, pursuant to federal civil rights law;

F.   Kaushal Niroula's conscious pain, suffering, and disfigurement, pursuant to federal civil rights law;

G.   General Damages, including wrongful death and survival damages, in excess of the mandatory amount for jurisdiction in the Unlimited Superior Court;

H.   Non-Economic Damages, including wrongful death and survival damages, according to proof plus all further and proper relief;

I.   Punitive damages as to individual peace officer defendants;

J.   Attorney's fees pursuant to State Law (Cal. Code Civ. Proc. § 1021.5 & private attorney general doctrine);

K.   Penalties under the Tom Bane Act;

L.   Interest; and

M.   All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C. §§ 1983 and 1988; California Code of Civil

1    Procedure §§ 377.20 et seq., 377.60 et seq., and 1021.5; California Civil

2    Code §§ 52 et seq., 52.1; and as otherwise may be allowed by California

3    and/or federal law.

4

5    Dated: August 25, 2023          GASTÉLUM LAW, APC

6                                    By: _____

7                                    Denisse O. Gastélum, Esq.

8                                    Attorneys for Plaintiffs,
                                     ESTATE OF KAUSHAL NIROULA, by and through
9                                    successors in interest, Radha Niroula and Krishna
10                                   Niroula; RADHA NIROULA, individually;
                                     KRISHNA NIROULA, individually
11

12   Dated: August 25, 2023          **LAW OFFICES OF CHRISTIAN CONTRERAS**
                                     **A PROFESSIONAL LAW CORPORATION**
13

14                                   By: _____

15                                   Christian Contreras, Esq.

16                                   Attorneys for Plaintiffs,
                                     ESTATE OF KAUSHAL NIROULA, by and through
17                                   successors in interest, Radha Niroula and Krishna
                                     Niroula; RADHA NIROULA, individually;
18                                   KRISHNA NIROULA, individually

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

## **DEMAND FOR JURY TRIAL**

Plaintiffs, ESTATE OF KAUSHAL NIROULA, by and through successors in interest, Radha Niroula and Krishna Niroula; RADHA NIROULA, individually; and KRISHNA NIROULA, individually, hereby make a demand for a jury trial in this action.

Dated: August 25, 2023

GASTÉLUM LAW, APC

By: _____
Denisse O. Gastélum, Esq.
Attorneys for Plaintiffs,
ESTATE OF KAUSHAL NIROULA, by and through successors in interest, Radha Niroula and Krishna Niroula; RADHA NIROULA, individually; KRISHNA NIROULA, individually

Dated: August 25, 2023

**LAW OFFICES OF CHRISTIAN CONTRERAS**
**A PROFESSIONAL LAW CORPORATION**

By: _____
Christian Contreras, Esq.
Attorneys for Plaintiffs,
ESTATE OF KAUSHAL NIROULA, by and through successors in interest, Radha Niroula and Krishna Niroula; RADHA NIROULA, individually; KRISHNA NIROULA, individually

**COMPLAINT FOR DAMAGES**